## ARRISON v. HARMSTEAD.

A deed was executed and left with the magistrate before whom it was acknowledged, and taken away by a brother of the grantee for him: *Held*, to be proper evidence of delivery to leave to a jury.

A conveyance, reserving a rent in fee, was altered by the insertion of material words, after delivery, by the agent of the grantor; the land passes discharged of the covenants.

Nor can a recovery be had on the original contract, independent of the deed.

Nor by an action for use and occupation; for the grantee is the owner of the land.

Nor will equity relieve and compel a redelivery of the premises, or payment of the rent.

The estate of the person making the alteration is destroyed, as a penalty of his fraud. Per ROGERS, J.

The deed being avoided by such alteration, a purchaser bonâ fide, without notice, is in no better situation than the original parties.*a*

ERROR to the District Court of the city and county of Philadelphia.

*Jan.* 30, 31.—This was an action for ground-rent. The first count was on the covenant; the second on a verbal contract, averring possession taken thereunder by the defendant; the third for use and occupation, and the fourth for interest. Pleas, non est factum and nil debet. The main question was the effect of an alteration of the deed. After the originals and counterparts were executed, they were left at the office of an alderman, before whom they were acknowledged, and taken away by defendant's brother, for the owner. At the request of plaintiff's agent, the deeds were returned to the scrivener employed by defendant to draft them, to be recorded. This person purchased the ·rents, but did not take a conveyance to himself; when he sold they were conveyed to his vendee. After they had been thus returned, the words " within ten years" were inserted in a blank left in the printed deed, in the redemption clause, by a clerk in the scrivener's office, but by whose direction, or whether before the purchase by the scrivener, was the point submitted to the jury. The contract for the conveyance in consideration of these rents was proved. The real plaintiff was a bonâ fide purchaser, to whose use this action was brought in the name of the original covenantee. His honour, Jones, J., told the jury, a delivery might be made without formal words, and left it to them to say whether leaving the deeds with the alderman, and possession taken by defendant, with consent of plaintiff, was a sufficient evidence of delivery. Second, If the plaintiff, or any one by his authority, or the scrivener

*a* An eminent counsel informs me, he has always required, on the purchase of a ground-rent, a written statement from the owner of the land that he has no defence, &c., to the payment of the rent; the propriety of which is shown by this case; the deed itself affording no suspicion of the fact of an alteration, as it was inserted in a blank space, and the words were those almost uniformly used in similar conveyances.

after purchasing, made the alteration without defendant's consent, it avoided the deed, and recovery could not be had thereon. Alteration by a stranger would not affect it; a bonâ fide purchaser could not recover on this deed if thus avoided; that use and occupation would not lie. The jury found for defendant.

*E. S. Miller*, for plaintiff.—The onus, under the plea of non est factum, is on the defendant; 6 Mod. 208. Delivery must be actual, or by words, or both, Touch. 58; but the evidence here shows no delivery of the counterpart to plaintiff until after recording, and it is certain the alteration was before that. Even the record is not conclusive of delivery, 1 Penna. 32; 12 Mass. 461; and we are entitled to the strictest rule; nor is mere intention to deliver sufficient, 8 Connect. 42; 5 Mason, 60; 12 Johns. 421; and the presumption is in favour of alteration before, 2 Greenl. 147; 1 Halst. 215; but the alteration by the owner, not having a conveyance, will not avoid the deeds; 15 Johns. 298; 1 Paine, 343. The cases in Pennsylvania are numerous, of an innocent purchaser, through a void deed, being protected and relieved.

But, at all events, the party must elect whether he will consider the deed void or valid; and here, after having notice of the act, he entered and still occupies; 1 Swan. 390; 1 Ves. 172; 2 Sch. and Lef. 450; 13 Vin. *Fait*, W. pl. 6; Bacon Abr. *Election*, E.; 13 Serg. & Rawle, 22, 24; 10 Serg. & Rawle, 171. That the two distinct estates in the rent and land, Roff *v.* Weaver, 8 Watts & Serg. 126, were not divested by the alteration, is certain, Gib. Eq. Ca. 236; and our remedy would be in equity, which must here be administered through this action. This *estate* makes the difference between our case and a bond, Vin. Abr. *Fait*, X. 2, pl. 5, and the only consequence is to destroy our evidence; but as in Lewis *v.* Paine, 8 Cow. 71, we made it out aliunde; Hatch *v.* Hatch, 9 Mass. 311. But use and occupation would lie if the deed is gone; Comyn. Land. and Tenant, 431. [*Curiam.*—The difficulty is, the defendant owns the land.] But there is a holding of us; Franciscus *v.* Riegart, 4 Watts, 98. The seignory remains though the reversion is gone, 8 Watts & Serg. 126.

*J. A. Phillips*, contrà.—There was sufficient to warrant finding delivery, Shelton's Case, Cro. Eliz. 7. [*Curiam.*—The judge was right there.] The doctrine of innocent purchasers does not apply, for there was no deed in existence at the time of the purchase. It was not like a deed good till avoided, but it was in fact avoided. Use and occupation never lies if a deed was made, 10 Watts, 380; 3 Serg. & Rawle, 502, Henwood *v.* Cheesman.

*Price*, in reply.—Words, or an act, are essential to delivery, Van Amrige *v.* Morton, 4 Whart., and here the parties knew the blanks were to be filled up, 11 Serg. & Rawle, 171. But the grantee may elect to treat a deed after alteration as valid. Vin. *Fait*, U. pl. 6; Cauffman *v.* Cauffman, 17 Serg. & Rawle, 24, 365, 423; Masters *v.* Miller, Sm. Lead. Ca. n.; 2 H. Bl. 63. Equity would reform this instrument in favour of a purchaser. [*Gibson*, C. J.—Show a case. The deed is dead, and equity cannot put life into it.] Price *v.* Jenkins, 4 Watts, 85; Fletcher *v.* Peck, 6 Cranch, 133.

*March* 24.—ROGERS, J., after stating the pleadings.—The jury found that the plaintiff, Matthew Arrison, sold the defendant, Oliver P. Harmstead, a vacant lot, for which he executed a deed duly delivered, conveying to the defendant the said premises, reserving the rent, for which suit is brought. That, subsequently to the execution and delivery of the deed, it was altered in a material part by the plaintiff, or by some person having an interest in the premises, or by their authority. One of the disputed points at the trial was as to the time of the alteration; that is, whether it was made before or after the delivery of the deed. That an alteration was made, varying the effect and operation of the deed in a material part, and that the deed was delivered by the grantor to the grantee, seems not to have been denied, nor could it be, with any chance of success. This point was sent to the jury with a direction that a deed may be delivered by a formal act without formal words of delivery. If a man execute a deed, with a view to its being delivered, that is, if he does all that is necessary to perfect it, with the intention of having the deed delivered to the grantee, and the deed afterwards comes into the hands of the grantee, a jury may infer the assent of the grantor and the fact of delivery. The delivery may be either actual, by doing something and saying nothing, or else verbal, by saying something and doing nothing, or it may be by both. Shep. T. 57, 58; 12 Johns. 421; 1 Penna. Rep. 43. And in Shelton's Case, Cro. Eliz. 7, lessor for years grants his term by deed, and sealeth it in the presence of divers, and of the grantee himself; and the deed at the same time was read but not delivered, nor did the grantee take it, but it was left behind them in the same place.

The opinion of all the justices was, that it was a good grant; for the parties came for that purpose, and performed all that was requisite for perfecting it, excepting actual delivery; but it being left behind them, and not countermanded, it shall be said to be a delivery in law. By this it appears that it is the intention of the parties to be collected from all the acts and declarations which is to determine the fact of de-

livery. Although it is customary to use certain prescribed words, yet no particular formula is required to pass the title. The deed was actually signed and acknowledged, and the delivery attested by the alderman who took the acknowledgment. It was signed, sealed, and acknowledged with a view to delivery. Of this we are not permitted to doubt. It is equally certain that the deed went into the hands of the grantee with the assent of the grantor. That this was the understanding of all parties is manifest. We hear no complaint on the part of Arrison ; on the contrary, Smethhurst, who was his agent, sent to the defendant, in whose possession they were, for the deeds, for the express purpose of having them recorded. But this could not be, except on the footing that the deed had been delivered by his principal. The consummation of the title depends on the intention of the parties, of which the jury are the judges. On this they have passed, nor could they have decided differently from what they did. There is no error in this part of the case.

A deed, good in its creation, may become void by matter ex post facto, as by interlineation, erasure, or by alteration in a material part. But a deed may be good in part, and void in part. It may be good against one person and void against another. Of this many examples are given in Shep. T. 70. By the conveyance, the fee passes to Harmstead, with a reservation of a rent issuing out of the land to Arrison. Now, what is the effect of the fraudulent alteration of the deed by the grantor ? The answer is, that the law, in consonance with justice and policy, avoids the covenants reserving rents in favour of the fraudulent grantor, but preserves the fee-simple to the innocent grantee discharged from the covenants in the deed. The law proceeds on a principle of policy, which cannot be safely relaxed, which altogether forbids parties from tampering with written instruments or deeds. On them be the consequences of the fraudulent alteration ; it is at their peril. It would be most dangerous, if it could be suffered that a party delinquent may gain, but can lose nothing by his improper and fraudulent conduct. It cannot be, that the estate of the grantee is impaired, for that would be to affect a vested interest, without any fault on his part, a proposition too glaringly unjust to receive countenance in a court of justice. It is said to be contrary to equity, that the grantee shall retain the land without paying the stipulated rent. That by retaining the possession of the premises he elects to pay the price. The principle of election does not apply. When the deed was delivered, and possession taken, the grantee became the owner of the estate in fee-simple, subject to the conditions in the deed, but those conditions have been avoided by the wilful and fraudulent act of the grantor. He can-

not invoke the principles of equity. He has forfeited all aid from that quarter by his own fraud. The retention of the property by the grantee is merely the possession and enjoyment of what is his own by the contract. It is impossible, in this case, to say what injury the grantee has sustained. This cannot well be estimated. It does not follow that justice will be done by giving to the grantee a title according to the original and real contract. At any rate the grantor has precluded himself from occupying the ground by his own fraudulent act. The only way in which even a semblance of justice can be done would be by returning the purchase money with interest, paying for all the improvements to, and a re-conveyance of the premises. This, however, has not been offered, nor would the grantee be bound to accept of it if tendered; as it is plain that in many cases it would be impossible to place the parties in their original condition; and besides, it might operate, in some cases, as a premium to fraud.

The counsel for the plaintiff requested the court to instruct the jury, that if they found the deed in question was altered by the plaintiff or his agent, yet, if they found a contract between the parties, similar to that contained in the deed, leaving out the clause limiting the period of redemption, whether verbal or otherwise, executed by delivery of possession and building on, and enjoyment of profits by the defendant, they might find for the plaintiff on the second and third counts of the declaration. This instruction the court very properly refused to give. In the first place, there is no evidence of any contract whatever, independent of the deed, and if there, was, it was merged in the deed, and a subsequent fraudulent alteration cannot restore it, so as to form the groundwork of an action in favour of the delinquent party. A party can never claim, either in a court of equity or law, through the medium of a fraud. If a bond, note, or other instrument for the payment of money be altered, and thereby avoided by the obligor, it has never yet been suffered or even attempted to recover on the original contract, as, for example, for money lent. It is a mistake to suppose that the evidence of title only is avoided; the whole contract becomes void, and it is held as a principle of policy that the fraudulent party may lose but can gain nothing by his fraud. To reverse this principle, would be attended with the worst consequences, as it would be in effect deciding that he might gain but could not lose by his own improper conduct. This is admitted as regards chattels, but it is said to be different in real estate; but why there should be a distinction is not by any means clear. And in accordance with these principles are the cases cited in 13 Vin. 40, let. N. pl. 6. If A. lease land to B. by indenture, dated 10th Feb., 27 H. 8, and after dies, and C. the heir of A. by indenture recites

the lease, but *misrecites it*, that is to say, reciting it to be dated 10th Feb., 28 H. 8, and then leases it by indenture to B. for years, to commence after the expiration of the said recited lease, and after the sealing and delivery of this last lease, this *misrecital is rased* and reformed, and made 10th Feb., 27 H. 8, according to the true lease, *but it is not proven by whom it is done, nor when;* this shall not avoid *the interest of the estate for years,* though it shall avoid the deed, because the deed is not of the essence to pass the estate. But the estate being well passed, and it not being necessary to show the deed for maintenance of the estate, the estate shall not be destroyed by it. This was so held by Jones and Harvey, J., but Crab, J., held contrà, that as it is lease by the deed it is a contract by the deed, and the party interested rasing the deed, he determines the deed, and his interest, by his voluntary act, as if he had surrendered; and the contract being by deed, he may not determine the deed and the covenants, but quoad himself he doth destroy it; but perhaps quoad the lessor, it may have essence, if the lessor will, but this is at his election, and not at the election of the lessee; 13 Vin. 40, is the authority there cited. It seems to me impossible to doubt the soundness of the latter opinion, based as it is on the injustice of allowing the innocent person to be injured by the act of the delinquent party. He may affect his own title, but cannot injure or impair the title of the other party. Indeed it seems to me difficult to account for the determination of the majority of the court, except that it was not known by whom or when the alteration was made, and therefore it would be unjust to divest his estate, when, for aught that appeared, he was in no default. In the case cited, Justice Jones cites Allen Swanwick's case, in the Court of Wards, to be resolved that the rasure of deed of feoffment doth not destroy the estate. What that case really was, we do not know; but if it was meant to say that when the rasure is made by the feoffor, it does not destroy the estate of the feoffee, it is precisely what we rule to be the law in the case in hand. This is the case of an indenture, by which an estate is conveyed in fee, reserving rent; the grantor alters the deed; we are of opinion that by the alteration his own interest is defeated, but that the estate of the grantee, viz. an estate in fee, is left in full force and virtue. These remarks dispose of the first, second, and fourth counts. The third count remains. The action for use and occupation is founded on an implied contract, for the jury may imply a promise to pay for the use and enjoyment of the property. It is a suit by the owner against a tenant, or occupier, for compensation for the use of his premises. But the evidence in this case was a sale and conveyance of a fee-simple, reserving a ground-rent to the grantor, his

heirs and assigns. This is a contract of an entirely different nature from a contract for use and occupation, and leaves no room for an implication of a promise to pay. Such evidence will not support a count for use and occupation. The defendant is himself the owner of the property, and how he can be compelled to pay for the use of premises which he owns in fee, it is difficult to understand. The action for use and occupation is a suit in which the owner may recover a fair equivalent from the holder, or occupier. But the plaintiff seeks to reverse this principle, by compelling the owner to pay for the use of his own property.

It is said that Mrs. Lewis is a bonâ fide purchaser, without notice, and that the action may be sustained on that ground. But conceding that she is, her situation is no better than the fraudulent grantor's. Although the title of the grantor was, in its inception, good, it became absolutely void by matter ex post facto. At the time of the assignment, the title being avoided, the assignor had nothing to convey; of course nothing passed to the assignee. It may be, and perhaps is, a hard case. Fraud may be committed on an innocent purchaser, who may find it difficult to guard against imposition. This is conceded; but it is far better to encounter this risk, than to give the least countenance to any alteration whatever of a solemn instrument of writing, which would certainly be the result, if the guilty party could escape the consequences of his fraud by a transfer, real or pretended, to a person who might assume the garb of an innocent purchaser for a valuable consideration. We cannot lay too many restraints upon trick, artifice, and fraud. The cases cited apply only to voidable deeds, where it is admitted the bonâ fide purchaser stands in a better position than the participant in the fraud. But these principles do not apply where the assignor has no title whatever, or, which is the same thing, where he once had a title avoided by his own fraudulent act. The assignees must protect themselves from imposition by proper covenants, or where these are improvidently omitted, by suit for an indemnity against the fraudulent assignor. On the distinction between a void and voidable instrument, it was ruled in Master *v.* Miller, 4 T. R. 320, that the unauthorized alteration of a bill of exchange, after acceptance, whereby the payment would be accelerated, avoided the instrument, and no action can afterwards be brought upon it, even by an innocent holder, for a valuable consideration. In Van Amrage *v.* Miller, 4 Whart. 382, the point is expressly ruled, on the distinction between a void and voidable deed. It is there held, that if a deed, executed and acknowledged by the grantor, with a blank for the grantee's name, be surreptitiously and fraudulently taken from the grantor's house, and

R 2

the blank filled up, no title passes thereby; and a bonâ fide purchaser, for a valuable consideration, from the person holding the deed, stands in no better situation than such fraudulent holder.

Judgment affirmed.