J-A29033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PENNYMAC CORP. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ERIC SCOTT NEFF AND NAOMA D. NEFF | : | |
| Appellants | : | No. 727 WDA 2019 |
| v. | : | |
| PNC BANK, NATIONAL ASSOCIATION, LUCILLE J. ONTKO AND CITIBANK, NATIONAL ASSOCIATION | : | |

Appeal from the Order Entered April 11, 2019
In the Court of Common Pleas of Butler County Civil Division at No(s):
A.D. No. 2011-10829

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED FEBRUARY 20, 2020**

Eric Scott Neff and Naoma D. Neff, husband and wife (Neffs), appeal an order of the Court of Common Pleas of Butler County (trial court) involving cross-motions for summary judgment filed in a Motion for Mortgage Foreclosure maintained by PennyMac Corporation (PennyMac) against the

_____

[*] Retired Senior Judge assigned to the Superior Court.

property (Property) owned by the Neffs located on or near Saint Joe Road, Chicora, Pennsylvania, 16025 (Property). For the reasons that follow, we vacate the trial court's order and remand for further proceedings consistent with this memorandum.

### I.

### A.

The origins of the case arose when the Neffs desired to refinance a 2006 mortgage and loan they had with PNC Bank, National Association (PNC) encumbering their Property. Prior to seeking refinancing, the Neffs subdivided the Property encumbered by a previous 2006 mortgage into two parcels, with one parcel on which their house was located being assigned Tax Parcel No. 250-1F104-3, the tax number previously assigned to the entire Property before it was subdivided. The second tax parcel, composed of vacant land, received a new number of Tax Parcel No. 250-1F104-3B.

On January 16, 2007, the Neffs executed a mortgage as security for payments and other obligations of the principal sum of $256,498 and it was recorded in the Butler County Recorder of Deeds Office. Eric Scott Neff signed a promissory note on the same day with the same terms and conditions. The loan was payable in equal, consecutive monthly installments of principal and interest for $2,152.29. Importantly, when the 2007 mortgage was executed, it identified only Tax Parcel No. 250-1F104-3 as being subject to the

mortgage, but Tax Parcel No. 250-1F104-3B was added to the mortgage in pen and ink prior to recording.

On January 19, 2007, PNC assigned the mortgage, promissory note and indebtedness to Citibank National Association (Citibank), who, in turn, on October 3, 2011, assigned the mortgage, promissory note and indebtedness to PennyMac. Since April 2010, the Neffs failed to make the obligated monthly mortgage payments as well as required escrow payments for real estate taxes and insurance.

**B.**

Because the Neffs failed to make those payments, on June 27, 2011, Citibank filed a Complaint in Mortgage Foreclosure seeking foreclosure and sale of the Property. After it was assigned the mortgage, PennyMac filed an Amended Complaint seeking the same relief. Attached to this pleading was the mortgage with an Exhibit A, which was a legal description in metes and bounds encompassing both Tax Parcel No. 250-1F104-3 and 250-1F104-3B. (R. 40a-43a).

The Neffs filed an Answer, New Matter and Counterclaim to PennyMac's Amended Complaint.[1] In its Answer, New Matter and Counterclaim, the Neffs

---

[1] The Neffs had filed a slander-of-title action against PennyMac that was dismissed by the trial court because they failed in their complaint to point to any false statement published by PennyMac. On appeal, we affirmed. **Neff v. PennyMac Corp**., No. 1568 WDA 2016, 2017 WL 2629458, at *1 (Pa. Super. filed June 19, 2017).

contended that PennyMac's foreclosure action was barred because PNC had wrongfully and fraudulently altered the mortgage after execution without their knowledge when it added Mortgage Tax Parcel No. 250-1F104-3B in pen and ink, when the mortgage that it executed only encumbered Tax Parcel No. 250-1F104-3. (Answer Para. 6, New Matter, Para. 22, R. 65a). Attached to this pleading was the mortgage that did not include an Exhibit A. (R. 70a-74a. R. 71a is blank page).

The Neffs' Counterclaim contained two counts. Count I alleged that PennyMac should have known that the mortgage had been fraudulently altered by PNC and, despite this knowledge, maliciously prosecuted the mortgage foreclosure. In Count II, the Neffs sought damages under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1, *et seq*., alleging that PennyMac, by filing a mortgage foreclosure action based on a fraudulently altered mortgage, engaged in unfair and deceptive acts prescribed by that Act.

PennyMac filed preliminary objections to both counts. It contended that Count I was barred because Pa.R.C.P. 1148[2] only allows a counterclaim in a mortgage foreclosure action arising from the same transaction. Agreeing, the trial court struck that count because it sought damages for the prosecution of

---

[2] Pa.R.C.P. 1148 provides that "A defendant may plead a counterclaim which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose."

- 4 -

the foreclosure action, not matters that went to the creation of the mortgage. As to Count II, PennyMac, among other things, demurred, contending that the Neffs failed to plead a claim cognizable under the UTPCPL. Again, the trial court agreed, finding that the Neffs did not allege that PennyMac made any false representations or engaged in any deceptive conduct upon which they relied and caused them harm. The trial court went on to note that in the New Matter, the Neffs asserted fraud and the invalidity of the mortgage transaction by virtue of a document alteration by PennyMac's predecessors that remained as available defenses.

After the counterclaims had been dismissed,[3] PennyMac filed an Answer to the Neffs' New Matter contending, among other things, that the mortgage was not fraudulently altered because the Neffs "were aware that both parcels were going to be encumbered, including Tax Parcel No.250-1F104-3B, were intended to be the security for the mortgage and [the Neffs] consented to the same which was evidence by the full metes and bounds description of both parcels and both parcel numbers listed in the recorded mortgage on Exhibit A thereto." (Paragraph 23 of Answer to New Matter, R. 66a).

---

[3] The Neffs then filed a separate action against the PNC defendants in the trial court at A.D. 2012-11119, essentially raising the same matters raised in their counterclaim. The trial court dismissed those claims and that matter is at separate appeal in this court at 728 WDA 2019.

- 5 -

The Neffs joined PNC, Citibank and Lucille J. Ontko (Ontko) (collectively, PNC) in the foreclosure action, claiming that if they were to be found liable to PennyMac, then PNC, Citibank and Ontko were liable to them.

## II.

## A.

Discovery commenced and in his deposition, Eric Scott Neff testified that he went to PNC's Moraine Pointe branch office and spoke with PNC's financial sales consultant, Marilou Hollinger, about refinancing a mortgage on their property that they had with PNC. That mortgage encumbered Tax Parcel No. 250-1F104-3. He testified that he had subdivided the Property and desired to have only one parcel of their Property, the one upon which their home was located, encumbered by the mortgage, not the other 18.66-acre parcel when subdivided into No. 250-1F104-3B as its tax identification number. (R. 620a-21a).

Mr. Neff stated that Ms. Hollinger told him that she would need to have this approved by others at PNC, and later Ms. Hollinger informed him that his request for the loan to be secured only by the parcel on which his and his wife's home was located had been approved. *Id*. The Neffs claim that Ms. Hollinger inquired of PNC employee Gino Perri, who worked in the Expanded Credit Program with PNC, after which Ms. Hollinger confirmed that PNC was willing to accommodate their request. (R. 621a-22a).

Mr. Neff went on to testify that the mortgage he and his wife executed at closing clearly identified Tax Parcel No. 250-1F104-3 as being the only parcel encumbered by the mortgage. He testified that sometime after they executed the mortgage, the mortgage was altered without their knowledge or permission to add the 18.66-acre parcel of land to the mortgage in clearly visible pen and ink, Tax Parcel No. 250-1F104-3B. (R. 623a–24a).

Both Neffs testified that the mortgage documents presented to them at closing did not contain Exhibit A to the mortgage. (R. 624a). They admitted, though, that they did not believe that PennyMac had any direct involvement in altering the mortgage. They also admitted that they had no contact with Ms. Ontko, the person at PNC who made the alteration. (R. 318a-24a).

Ms. Hollinger, in her deposition, testified that she could not remember whether the Neffs told her that they only wanted one parcel encumbered by the mortgage or that the Property was subdivided for that purpose. (R. 328a-29a). While she had a general recollection that Mr. Perri worked in PNC's Expanded Credit Program, she did not recall his involvement or any discussion between the two of them. (R. 148a).

Regarding the mortgage documents, she testified that mortgages originating from her office are prepared by PNC's mortgage department, and she simply has the borrowers execute the documents at closing. (R. 325a; R. 328a-29a). She testified that she did not have any contact with Ms. Ontko, the person who had made the alteration and necessarily did not make her

aware that the Property had been subdivided or that the Neffs allegedly intended only one parcel of property to be listed on the mortgage as collateral. (R. 327a). Regarding Exhibit A to the mortgage, Ms. Hollinger testified that Exhibit A was not part of the mortgage documents when they were executed. (R. 143a).

Ms. Ontko testified that she had no contact with the Neffs or Ms. Hollinger about this transaction and that she was not aware that a subdivision had occurred or that the Neffs allegedly wanted only one parcel listed on the mortgage. (R. 330a-31a). She also testified that her sole responsibility with PNC was to review mortgages for accuracy using property/collateral information provided to her by the bank and underwriting prior to recording, and to correct any errors on the face of mortgages based upon the property/collateral information she had. (R. 332a-35a). She pointed out that her initials appear on prior mortgages signed by the Neffs, correcting other errors on the Neffs' prior mortgages. (R. 336a). Her handwriting on the mortgage was simply intended to correct an error on the mortgage because she believed, based upon the Property report, that the second tax parcel number should be listed on the mortgage prior to recording. (R. 335a, 337a-39a). She was unaware that adding the second parcel number to the mortgage was contrary to the Neffs' alleged intent. (R. 335a, 338a-39a).

Mr. Perri confirmed that Ms. Ontko's role was to correct errors on the documents and the property information report provided to her. He testified

that Exhibit A to the mortgage would have been prepared based upon the appraisal of the Property used as collateral for the mortgage. (R. 340a-43a). He testified that he has no recollection of the transaction and did not recall speaking with Ms. Hollinger on any occasion, nor does he recall speaking with Ms. Ontko concerning the 2007 mortgage. (R. 345a-46a). He went on to testify that a request to split off a parcel from a mortgage was unusual and would require approval by an underwriter. (Perri Deposition at 33-35, 46). Such a request should have been documented in writing in the loan file. (*Id.* at 36-37, 39).

## B.

At the close of discovery, all the parties filed motions for summary judgment. In their motion for summary judgment, the Neffs contended that the mortgage foreclosure action should be dismissed. They contend the mortgage was void because PNC had materially altered it when Ms. Ontko added Tax Parcel No.250-1F104-3B to the mortgage in pen and ink without their knowledge or consent. The Neffs attached a copy of the mortgage that they executed that had no pen and ink alteration nor did it have an Exhibit A. (R. 83a-85a). They also attached the recorded mortgage with the pen and ink alteration with an Exhibit A. (R. 86a-89a). However, in their motion for summary judgment, the Neffs contend that the only material alteration to the mortgage was the pen and ink alteration that encumbered Tax Parcel No. 250-1F104-3B.

In its motion for summary judgment, PennyMac contended that it is entitled to summary judgement because:

- Mortgagees cannot establish the Mortgage was fraudulently altered because there is no evidence that anyone intentionally added a second parcel number to the mortgage with knowledge that the second parcel number was allegedly not intended to be added to the mortgage to defraud the Neffs.

- The elements necessary to prove that it is entitled to equitable subrogation and has an equitable lien against the Property which permits it to enforce and foreclose on such lien against both tax parcel numbers 1F104-3 and 1F104-3B.

- Regardless of whether the Neffs intended to encumber Parcel Number 1F104-3B with the mortgage, Mortgagor is entitled to Partial Summary Judgment against Parcel Number 1F104-3 because the Neffs admit that they intended to encumber that parcel.

(R. 186a-200a). It did not contend that the Exhibit A metes and bound description was dispositive of what property was encumbered.

PNC also filed a motion for summary judgment mirroring the reasons given by PennyMac. In opposition to the Neffs' motion for summary judgment, among other things, PNC contended that there is a genuine issue of material fact as to what properties the mortgage was to encumber. It also contended that there was a material question of fact as to whether the Neffs actually communicated to PNC that they wanted to encumber only one parcel and/or informed it that the Property had been subdivided.

**C.**

The trial court denied the Neffs' motion for summary judgment based on fraudulent representation.[4]  It found that nothing presented showed that any person, including the person who made the change, Ms. Ontko, did anything fraudulent, only believing her change was a correction or supplement to a deed.[5]

---

[4] The elements of fraudulent misrepresentation are:  (1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.  ***Weston v. Northampton Pers. Care. Inc.***, 62 A.3d 947, 960 (Pa. Super. 2013).   Scienter   is   a   key   element   in   finding   fraudulent misrepresentation.  ***Id***.

[5] When  a  trial  court  addresses  whether  to  grant  a  motion  for  summary judgment, the following standard applies:

> When  a  party  seeks  summary  judgment,  a  court  shall  enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could  be  established  by  additional  discovery.   A  motion  for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law.  In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.  Finally, the court may grant summary  judgment  only  when  the  right  to  such  a  judgment  is clear  and  free  from  doubt.   An  appellate  court  may  reverse  the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion.

***Swords v. Harleysville Insurance Companies***, 883 A.2d 562, 566–67 (Pa. 2005) (citations omitted).  Moreover, not only must there not be disputed

After reviewing the vintage case law holding that there can be no recovery on a mortgage that has been materially altered, the trial court held that while the mortgage had been altered, it had not been materially altered. Consequently, it denied the Neffs' motion for summary judgment.

Consistent with that holding, because PNC understood that the mortgage was to encumber both parcels while the Neffs believed it only encumbered Tax Parcel No. 250-1F104-3, the trial court held that there was a mutual mistake because each misunderstood the others' intent. Because the Neffs admit that they intended to encumber that tax parcel, the trial court then reformed the mortgage to encumber only that parcel. It went on to find that since the mortgage was in default, PennyMac was entitled to partial summary judgment against Tax Parcel No. 250-1F104-3 only.

The trial court, however, held that PennyMac was not entitled by equitable subrogation entitling them to an equitable lien[6] against both tax

---

facts, if there are facts that have not been advanced that the court is unable to make a legal determination, it would be appropriate to deny summary judgment.

[6] "[E]quitable subrogation allows a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance." *Infante v. Bank of America*, 130 A.3d 773, 776-77 (Pa. Super. 2015). Pennsylvania requires four criteria to be met for equitable subrogation to apply:

(1) the claimant paid the creditor to protect his own interests;
(2) the claimant did not act as a volunteer;
(3) the claimant was not primarily liable for the debt; and

- 12 -

parcels because it did not meet the four-prong test necessary for equitable

subrogation. Specifically, it found that PennyMac:

> (1) did not accept assignment of the mortgage to protect its own interest because it was assigned to it after Citibank had already filed a complaint in mortgage foreclosure against the Neffs;
>
> (2) acted as a volunteer because it acted under no compulsion when it bought the mortgage from Citibank;
>
> (3) was primarily liable for the debt; and, as to the last prong;
>
> (4) because the other three requirements for equitable subrogation were not met, that it was unnecessary to determine if allowing subrogation would not cause an injustice.

**D.**

The Neffs timely appealed. Because the trial court only issued a partial

summary judgment, we issued a rule to show cause why the appeal should

not be quashed. While acknowledging that the trial court order only granted

a partial summary judgment, the Neffs responded that the trial court's order

was final because once it reformed the mortgage and allowed foreclosure of

Tax Parcel No. 250-1F104-3 to proceed, there was nothing left for the trial

---

> (4) allowing subrogation will not cause injustice to the rights of others.

*Id*. As to the second prong, a creditor who extends a loan, the proceeds of which were applied to previously secured liens, is a volunteer because the creditor is an entirely voluntary agent with no interest in the property and at liberty to make its own bargain-agree or refuse to make the loan as it saw fit. ***1313466 Ontario, Inc. v. Carr***, 954 A.2d 1 (Pa. Super. 2008).

court to decide. Notwithstanding that it was also seeking to foreclose on Tax Parcel No. 250-1F104-3B, that the trial court dismissed the equitable subrogation claim that sought to place a lien against both parcels as well as that it only sought a partial summary judgment, PennyMac did not respond to the rule. We then allowed the appeal to proceed.[7]

## III.

On appeal, the Neffs contend that the trial court erred in granting PennyMac's motion for summary judgment by finding that a mutual mistake existed as to what the mortgage encumbered, allowing it to reform the mortgage and to enter an *in rem* judgment as to Tax Parcel No. 250-1F104-3 because there was no dispute that tax parcel was to be encumbered. Regardless of whether there was a mutual mistake, they contend the trial court cannot reform a materially altered mortgage because it is void *in toto*. They go on to argue that even if a materially altered mortgage can be reformed if there was a mutual mistake, it was for the jury decide, not the trial court on a motion for summary judgment.

_____

[7] "Our standard of review of an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary." *Shepard v. Temple University*, 948 A.2d 852, 856 (Pa. Super. 2008) (quoting *Murphy v. Duquesne University*, 777 A.2d 418, 429 (Pa. 2001)).

PennyMac argues that the trial court correctly found that there was no fraudulent or material alteration warranting voiding the mortgage. It argues that under the Neffs' version of events, they believed the mortgage would encumber only the Property having Tax Parcel No. 250-1F104-3, while PNC clearly believed that the mortgage, which paid off the 2006 mortgage encumbering both parcels, was intended to encumber both parcels. Because there was a mutual mistake as to what the mortgage was to encumber, PennyMac contends that that made it appropriate for the trial court to reform the mortgage to encumber Tax Parcel No. 250-1F104-3.

**A.**

Relating to the Neffs' contention that the trial court had no authority to reform the mortgage, a written instrument can be reformed where there has been a showing of fraud, accident or mutual mistake. *See Regions Mortg., Inc. v. Muthler*, 889 A.2d 39, 41 (Pa. 2005) (citing *Kutsenkow v. Kutsenkow*, 202 A.2d 68 (Pa. 1964)). Mutual mistake will afford a basis for reforming a contract. In the context of a mortgage, "when a mortgagee fails to properly secure a loan, the equitable remedy of reformation is unavailable unless bad faith, accident, or mutual mistake can be shown, and in the case of unilateral mistake, the party against whom reformation is sought must be shown to have knowledge of the mistake sufficient to justify an inference of fraud or bad faith." *Regions Mortg., Inc., supra* at 41. A mutual mistake occurs when the written instrument fails to set forth the "true agreement" of

the parties. **See Daddona v. Thorpe**, 749 A.2d 475, 487 (Pa. Super. 2000). "[T]he language of the instrument should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed." **Id**. (internal quotation marks and citation omitted). When a mortgage misdescribes the property intended to be mortgaged, the mistake may be corrected by a proper proceeding before foreclosure or in an action to foreclose. **See Trachtenberg v. Glen Alden Coal Co.**, 47 A.2d 820, 825 (Pa. 1946). Similarly, a deed can be reformed to correct an inaccurate description and make it conform to the intention of the parties even though one of the parties expressly denies that an error has occurred. **See Radnor Bldg. & Loan Ass'n v. Scott**, 120 A. 804, 806 (Pa. 1923) ("[T]he right to reformation in equity, if mutual mistakes appear, is unquestionable."); **see also Zurich Am. Ins. Co. v. O'Hanlon**, 968 A.2d 765, 770-71 (Pa. Super. 2009). Moreover, to obtain reformation because of mutual mistake, "the moving party is required to show the existence of the mutual mistake by evidence that is clear, precise and convincing." **Smith v. Thomas Jefferson University Hospital**, 621 A.2d 1030, 1032 (Pa. Super. 1993) (citations omitted); **see also Vonada v. Long**, 852 A.2d 331 (Pa. Super. 2004).

However, while a mortgage or deed can be reformed if there is a mutual mistake, that principle seems not to apply when there is a material alteration of the mortgage or deed. While, like the trial court, we can find no recent

- 16 -

Pennsylvania case or, for that matter, any recent case in any jurisdiction involving the effect of an alteration of an instrument including a mortgage,[8] Pennsylvania courts have uniformly held that a material alteration of a mortgage or deed, after its execution, renders the entire document void. ***See, e.g., Mcintyre v. Velte***, 25 A. 739 (Pa. 1887). "[A]n altered instrument is so far vitiated that no recovery can be had on its original or altered terms; it cannot be considered as void for the unauthorized change and valid in other respects, but is void altogether... The vitiating effect of an alteration cannot be obviated by afterward attempting to restore the instrument." ***Shiffer v. Mosier***, 74 A 426, 427 (Pa. 1909).

In ***Newman v. Cover***, 150 A. 595, 596 (Pa. 1930), our Supreme Court set forth the reason behind the policy of declaring the instrument void, stating:

> The policy of the ... law that an unauthorized material alteration of a written instrument by the holder, or with his consent, vitiates it as to nonconsenting parties, is to preserve the integrity of legal instruments by taking away the temptation of tampering with them. [Therefore,] the law does not permit the plaintiff to fall back upon the contract as it was originally; [on the contrary,] in pursuance of a stern but wise policy, it annuls the instrument as to the party sought to be wronged.... Not only will an alteration vitiate the instrument as between the immediate parties, but it will vitiate it even as against a bona fide holder without notice as the latter can acquire no right or title other than that of the person under whom he claims.

---

[8] ***See* Effect of Alteration Intended Merely To Correct Mistake In Instrument So As to Conform It To Original Understanding**, 73 A.L.R. 652 (originally published in 1931).

*Id*. at 596; *see also Arrison v. Harmstead*, 2 Pa. 191, 194 (Pa. 1845) (alteration after execution rendered deed void, irrespective of whether it was subsequently assigned to bona fide purchaser for value. "Although the title of the grantor was, in its inception, good, it became absolutely void by [its subsequent alteration]. At the time of the assignment, the title being avoided, the assignor had nothing to convey; of course, nothing passed to the assignee."); *Wallace v. Harmstead*, 15 Pa. 462, 467 (Pa. 1851) (alteration of a deed makes every part of it a forgery); *Garrard v. Haddan*, 67 Pa. 82 (Pa. 1871) (alteration or erasure of a deed).

**B.**

PennyMac does not dispute that the mortgage was altered nor does it dispute that if it is materially altered, the mortgage is void; it only disputes that it was not materially altered because it contained a number of *indicia* that both parcels were to be encumbered, specifically:

- it already contained legal descriptions of the parcels without the handwritten parcel number pointing that the first page of the Mortgage contains a deed reference to a deed containing a legal description for the collateral encompassing both parcels.

- the tax parcel number typed on the Mortgage had been the only tax parcel number for the entire property just weeks before the closing of this loan transaction;

- since the Mortgage contained the address assigned to both parcels it contends that the addition of the handwritten parcel number to include the new, second tax parcel number was simply intended to correct the Mortgage to comport with the legal description contained in the Mortgage for the collateral and correct the omission of the newly assigned tax parcel number.

Considering all that, because the handwritten tax parcel number did not increase the collateral for the mortgage, PennyMac contends that the trial court properly did not void the mortgage because the addition of the second parcel cannot be considered a material alteration.

It also contends that even under the Neffs' version of events, that evidence conclusively shows that there was a mutual mistake as to what was to be encumbered, allowing the trial court to reform the mortgage. In effect, to end the matter, PennyMac, while contending throughout the proceeding that the mortgage encumbers both parcels, acceded to the trial court's encumbering of only one parcel.

Both PennyMac and the Neffs' arguments fail to point to any determination as to what the executed mortgage document contained as the touchstone for deciding whether it was materially altered. PennyMac attached to its Amended Mortgage Foreclosure Complaint the recorded mortgage with an Exhibit A. In its Answer, New Matter and Counterclaim to the Amended Complaint, the mortgage that the Neffs attached did not include an Exhibit A, but they have contended throughout the proceeding that the only alteration was that Tax Parcel No. 250-1F104-3B was added to the mortgage in pen and ink. (Answer Para. 6, New Matter, Para. 22. R. 65a).

PennyMac assumes that Exhibit A was part of the mortgage. In its brief to us, PennyMac contends that the mortgage was not materially altered because "[t]he legal description of the collateral takes precedence over all

other indicators of the precise collateral for the Mortgage when there is any discrepancy. Therefore, the highest and best descriptor of the Property to be pledged as collateral was already listed in the Mortgage through the deed reference before any handwritten addition to the Mortgage occurred. The Neffs knew they were executing a Mortgage with a deed reference to a metes and bounds legal description that encompassed both parcels as collateral for the Mortgage. As a result, the Mortgage, even without the additional tax parcel number, described and encumbered both parcels, so that the addition of the tax parcel number did not increase the size of the collateral contained in the Mortgage signed by the Neffs and, in turn, cannot be considered a material alteration of the Mortgage." (PennyMac Brief, at 26.)

In its Reply Brief, the Neffs agree with PennyMac that a metes and bounds legal description trumps a less specific descriptor of the Property. However, they contend, "at the time that it was presented to Appellants for their review and signatures, the mortgage in question contained no metes and bounds description." (Neffs' Reply, at 11.) In support of its argument, PennyMac points to the testimony of Mr. Neff (R. at 624a), as well as the testimony of Ms. Hollinger, who they contend confirmed that Exhibit A, which was attached to the altered mortgage when recorded, was not part of the mortgage that was presented to the Neffs for their signatures. (R. 143a).

While evidence was adduced during discovery that Exhibit A was not part of the mortgage when executed, as far as we can discern, this is the first

- 20 -

time that PennyMac or the PNC defendants said that Exhibit A controls what was encumbered. In addition, as far as we can discern, the Neffs have never contended that its addition after execution was a material alteration. Moreover, the trial court did not mention Exhibit A in determining that the mortgage was not materially altered.

However, without finding what the mortgage actually contained when executed, the trial court did not have the foundation to make a determination that the mortgage was not materially altered. Because the issue of whether Exhibit A was attached to the mortgage when executed was not even advanced before the trial court, we are also unable to address the issue of whether the mortgage was materially altered. Accordingly, we remand to the trial court for further proceedings on this issue.

## C.

It is also necessary to remand to the trial court to determine whether the Neffs told PNC, as they testified in their depositions, that they only wanted one parcel to be encumbered, or whether they just requested refinancing of the existing mortgage that encumbered the entire Property without telling PNC that they had subdivided the Property into two parcels. In PNC defendants' summary judgment brief in the trial court, they made the following argument:

> The Neffs claim they informed PNC that they only wished to include tax parcel 1F104-3 in the Mortgage spread. There is no independent source in the record supporting that contention. Therefore, the only argument that the Neffs can make at this stage of the case is based upon their own testimony. Yet it is well established that the Neffs cannot prevail at summary judgment

based on their own deposition testimony. ***Dudley v. USX Corp.***, 606 A.2d 916, 918 (Pa. Super. 1992).

Second, there is no documentation in the factual record to support the Neffs' claim. ***See*** loan file documents included in Appendix 16. In fact, only two pieces of documentary evidence have been identified that bear on this issue. One document shows that in communications between PNC and the Neffs, that no reference is made to such a limitation. ***See*** Appendix Exhibit 16 at CITIBANK0000913. The other piece of documentary evidence is the Mortgage itself, which describes the property subject to the Mortgage as the same property conveyed to the Neffs therefore including both parcels.

Third, no other witnesses, including the PNC employees who actually dealt with the Neffs during the Mortgage transaction, recall the Neffs making such a request, much less PNC actually approving it.

***

Additionally, the Neffs were seeking an **increase** in the mortgage amount, but now contend that they intended to give less security for the larger loan. As a result a jury could consider all of the evidence and simply reject the Neffs' story that the Mortgage was supposed to cover only one of the two newly subdivided parcels. A jury could determine that the Neffs never actually bargained to keep parcel 1F104-3B of the Mortgage and only later decided to take advantage of the fact that in one part of the Mortgage only one parcel is mentioned. The potential for such conclusions, fully supported by the evidence, is more than sufficient support for reformation of the Mortgage for unilateral mistake. Consequently, genuine issues of material fact exist and this Court should deny Plaintiffs' Motion for Summary Judgment. (footnote omitted).[9]

---

[9] ***Dudley*** set forth what is known as the ***Nanty-Glo*** Rule [***Nanty–Glo v. American Surety Co***., 163 A. 523 (Pa. 1932)]. That Rule governs the use of oral testimony (either through affidavits or depositions) to determine the outcome of a case in motions practice. As ***Dudley*** provides "... the party moving for summary judgment may not rely solely upon its own testimonial affidavits or depositions, or those of its witnesses, to establish the non-

(PNC Defendants' brief in opposition to Neffs' motion for summary judgment, at 10-11).

What this means is that there is a disputed question of fact as to what was to be encumbered. If the Neffs fail to convince the factfinder that they requested only one parcel to be encumbered, then any alteration to the mortgage and/or attaching Exhibit A would not be material alterations, but merely corrections to carry out the intent of the parties. If, however, the Neffs are believed, then the adding of the additional parcel as well as Exhibit A would be a material alteration of the deed making the mortgage void. Finally, if the mortgage is determined to be void, depending on what other documents provide or arrangements made between the parties, that does not necessarily mean that they would be under no obligation to enter into a new mortgage, *albeit* not with the same priority position.

**D**.

While willing to be satisfied with an encumbrance against one parcel resulting from the trial court reformation of the mortgage, if the mortgage is found to be void, PennyMac contends that the trial court erred in holding that it is not entitled to equitable subrogation for the amount owed under the mortgage against both parcels of the Property. However, because we have not found the mortgage void and, more importantly, until it is determined

---

existence of genuine issues of material fact." **Dudley** at 918; **see also DeAnnitt v. New York Life Ins. Co**., 73 A.3d 578, 595 (Pa. Super. 2013).

what the mortgage was intended to encumber, it would be premature to address this issue. That is so because even if we agreed with PennyMac's legal arguments, we would not know whether equitable estoppel applies to one or both parcels.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/20/2020