Home Owners' Loan Corporation, Appellant, *v.*
Crouse et al.

260

Argued December 14, 1942.

Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Eugene J. Corrigan*, with him *Neal L. Thompson* and *Max M. Bergad*, for appellant.

*Fred B. Trescher*, of *Kunkle, Trescher & Snyder*, for appellee, was not heard.

OPINION BY BALDRIGE, J., January 28, 1943:

This appeal is from a decree of the court below sustaining defendants' preliminary objections and dismissing the bill in equity filed by the plaintiff.

The following are substantially the facts averred in the bill. W. H. Mitchell acquired in 1909 title to a lot of ground in Derry Township, Westmoreland County, upon which he subsequently built a house where he and his family reside. On April 29, 1925, the First Savings and Trust Company of Derry, hereinafter called the trust company, entered a judgment against Mitchell and Amanda his wife, in the sum of $5460, which was a first lien on their home. This judgment was revived on March 19, 1930, in the sum of $4880. On June 4, 1925, Homer Crouse caused a judgment in the sum of $682.50 to be entered against Mitchell, which since that time has been duly revived. Mitchell and wife on March 8, 1934, filed with the Home Owners'

Loan Corporation a written application for a loan for the purpose of paying the liens against their home. They set forth therein that their property was encumbered by a judgment, a first lien on the property, in favor of the trust company and there were also liens for the 1932, 1933, and 1934 county, township, and school taxes, but no reference was made to the Crouse judgment, and it appears that the H. O. L. C. had no knowledge of it. On March 16, 1934, J. M. Nicholson caused a judgment to be entered against the Mitchells in the sum of $113. The trust company, through its trustees and assignees who, in the meantime, had been appointed pursuant to a plan of reorganization, agreed to accept $3958.66 in payment and satisfaction of its judgment and Nicholson consented to postpone and subordinate his lien to the mortgage to be executed by the Mitchells as security for a loan granted by the H. O. L. C. for $4193.81. The H. O. L. C. paid from the proceeds of this loan the trust company's judgment, which was satisfied, and the taxes together with certain costs. In the early part of 1939 the appellant learned of the existence of the Crouse judgment. Request was then made that Crouse subordinate his lien to that of the H. O. L. C. mortgage. This he refused to do.

The complainant averred that Crouse was unjustly enriched at its expense and prayed for relief, which included striking off of the satisfaction of the trust company's judgment and the lien for taxes assessed against the Mitchell property; that the assignees and trustees of the company be directed to assign the judgment to the complainant; that the tax liens be decreed to be in favor of complainant and that it be subrogated to all rights, remedies and priorities of the trust company and the municipal authority in the tax liens.

Courts are inclined to favor and further the doctrine of subrogation or, as it is sometimes called, substitution, but that is not a universal remedy for those who

have parted with their money and obtained less security than they expected. To entitle one to subrogation his equity should be strong and superior to those who oppose it: *Appeal of Forest Oil Company,* 118 Pa. 138, 12 A. 442.

"It always requires something more than the mere payment of a debt in order to entitle the person paying the same to be substituted in the place of the original creditor. A mere volunteer or intermeddler who, having no interest to protect, without any legal or moral obligation to pay, and without an agreement for subrogation, or an assignment of the debt, pays the debt of another is not entitled to subrogation, the payment in his case absolutely extinguishing the debt. The payor must have acted on compulsion, and it is only in cases where the person paying the debt of another will be liable in the event of a default or is compelled to pay in order to protect his own interests, or by virtue of legal process, that equity substitutes him in the place of the creditor without any agreement to that effect; in other cases the debt is absolutely extinguished." 60 C. J. p. 716, §27.

One who is under no legal obligation or liability to pay a debt and who has no interest in, or relation to, the property is a stranger or volunteer with reference to the subject of subrogation: 25 R. C. L. p. 1324, §11. See, also, *In Re Account of Commonwealth Trust Co., Trustee (No. 1),* 247 Pa. 508, 515, 93 A. 766; *Leggate v. Korn,* 74 Pa. Superior Ct. 383, 387.

In *Mary W. Campbell v. Foster Home Association,* 163 Pa. 609, 636, 30 A. 222, the defendant loaned money to pay off a prior lien without the knowledge or consent of the plaintiff. The court held in such a case that there was no right of subrogation and cited with approval the principle set forth in Beach on Modern Equity Jurisprudence, section 801, that one who is only a volunteer cannot invoke the aid of subrogation and

such a person is not entitled to equitable relief. " 'He must have paid upon request or as surety, or under some compulsion made necessary by the adequate protection of his own right.' " See, also, *In Re Account of Commonwealth Trust Co., Trustee (No. 1),* supra.

The H. O. L. C. was a stranger to Mitchell. There was no legal obligation or compulsion for it to pay his debts. It was an entirely voluntary agent with no interest in the property and at liberty to make its own bargain—agree or refuse to make the loan as it saw fit.

Subrogation, being of equitable origin and nature, may be resorted to only when one has an equity to invoke which does not injure an innocent party. The appellant was a lender of money and occupies, in so far as the rights of Crouse the lien owner are concerned, the same position as anyone who lends money. It can hardly be said that Crouse, after six years had elapsed since the mortgage to the H. O. L. C. was given, is not prejudiced by having his lien postponed and the trust company's judgment, which has not been revived since 1930, given priority. We have held that the courts of equity will not relieve a party from the consequences of an error due to his own ignorance or carelessness when there were available means which would have enabled him to avoid the mistake if reasonable care had been exercised: *Felin v. Futcher,* 51 Pa. Superior Ct. 233; *Lessa v. Staler,* 75 Pa. Superior Ct. 468. If the appellant was unaware of the Crouse judgment it was not due to the fault of Crouse. It can be attributed only to its own negligence in failing to search or discover what clearly appeared on the public records.

In *Weir et al. v. Potter Title & Mortgage Guarantee Co. et al.,* 323 Pa. 212, 185 A. 630, Mr. Justice MAXEY, (now Chief Justice MAXEY) speaking for the court, said p. 221: "The right of junior lien creditors to advance in legal status in respect to a property to which their lien is attached, when senior lien creditors have

been paid, whether the encumbrances securing the latter's debt have been formally marked satisfied or not, is firmly inbedded in our law. The hold which a lien to secure the payment of a debt has on a property must be released in favor of a junior lien holder when the debt secured by the former has been liquidated."

When the trust company's judgment was paid it no longer was in existence in so far as lien creditors were affected: *Marshall v. Klein et al.*, 96 Pa. Superior Ct. 580, 583, 584.

The appellant asserts that the Act of Congress of June 13, 1933, and its amendment, U. S. Code, Title 12, §1463, Par. (d), permitted it to make loans only when it obtains a first lien. Even so, that mandate cannot defeat the property rights of Crouse, a third and innocent party who had nothing whatever to do with the transaction between the H. O. L. C. and Mitchells. We recognize that the decisions on the right of subrogation by one who lends money to discharge a lien are not in harmony, and that courts in a number, probably a majority, of our sister states have given judicial approval to appellant's position. See *Home Owners' Loan Corporation v. Collins et al.*, 120 N. J. Eq. 266, 184 A. 621; *Home Owners' Loan Corporation et al. v. Sears, Roebuck & Co. et al.*, 123 Conn. 232, 193 A. 769; *Federal Land Bank v. C. E. Marvin, Banking Commissioner*, 228 Ky. 242, 14 S. W. 2d 762; 70 A. L. R. 1396; and the cases cited in the annotation that follows under "Subrogation to prior lien of one who advances money to discharge it and takes new mortgage, as against intervening lienor." On the other hand there are a number of cases disallowing subrogation under facts similar to those before us under the above annotation. See 70 A. L. R., p. 1402, where a number of these cases are collected and it is in that latter group that the decisions of our appellate courts are definitely aligned

from which we do not feel warranted in withdrawing.

Decree of the court below is affirmed at appellant's costs.