1313466 ONTARIO, INC.

v.

Jeffrey N. CARR

**Appeal of U.S. Bank National Association, Trustee as the Assignee of Argent Mortgage Company (Two Cases).**

Superior Court of Pennsylvania.

Argued April 30, 2008.
Filed June 25, 2008.

Mandi L. Scott, Pittsburgh, for appellant.

Russell J. Heiple, Johnstown, for 1313466 Ontario, appellee.

BEFORE: ORIE MELVIN, BENDER and ALLEN, JJ.

OPINION BY BENDER, J.:

¶ 1 U.S. Bank National Association (U.S. Bank), Appellant, appeals from a trial court order denying its petition for intervention. The underlying action is a judgment mortgage foreclosure, filed by 1313466 Ontario, Inc. (Ontario), Appellee, against real property owned by Jeffrey N. Carr (Carr). For the reasons that follow, we quash this appeal.

¶ 2 The facts of the case are as follows. From 2003 to 2005, certain loans were extended to Carr, all of which were secured by mortgages on real property, ti-

tled in Carr's name, located in Cambria County, Pennsylvania. The first lien position was occupied by a mortgage from Carr to First Commonwealth Bank (subsequently assigned to Lendant Mortgage Corp. (Lendant)), recorded on June 25, 2003. In second lien position was a mortgage from Carr to Household Realty Corp. (Household), recorded on July 21, 2004. On February 24, 2005, Carr executed a mortgage in favor of Presidential Financial Corporation of Delaware Valley (Presidential Financial). That mortgage was subsequently assigned to Ontario. At the time the Ontario mortgage was recorded, it was in third lien position.

¶ 3 On July 1, 2005, Carr executed a mortgage in favor of Argent Mortgage Company, LLC (Argent), as security for a loan in the amount of $146,000. The Argent mortgage was later assigned to U.S. Bank. The proceeds of the U.S. Bank loan were used to pay off the Lendant and Household loans, as well as another unsecured loan. Therefore, following U.S. Bank's payoff of the Lendant and Household loans and the satisfaction of their mortgages, the remaining mortgages encumbering the Cambria County real property were the Ontario and U.S. Bank mortgages. However, U.S. Bank was unaware of the Ontario mortgage due to an error in its title search. U.S. Bank's Brief at 11.

¶ 4 Carr defaulted on his payments of the Ontario mortgage and Ontario subsequently obtained two judgments in mortgage foreclosure, docketed at Nos. 2006–5314 and 2006–5315 in the Cambria County Court of Common Pleas. In addition, U.S. Bank instituted its own mortgage foreclosure action in Cambria County at No. 2007–1862. A Sheriff's Sale of the Carr real estate was scheduled for September 14, 2007, but on September 5, 2007, U.S. Bank filed a petition to intervene, asserting a claim of equitable subrogation. It also petitioned for a stay of the Sheriff's Sale. The trial court denied the petition and U.S. Bank filed a Notice of Appeal. Pursuant to the trial court's order, U.S. Bank filed a timely concise statement of matters complained of on appeal in accordance with Pa.R.A.P. 1925(b).

¶ 5 In this appeal, U.S. Bank presents the following question for our review:

Did the trial court abuse its discretion or commit an error of law by failing to adopt the *Restatement (3d) of Property, Mortgages, § 7.6*, thereby denying Appellant an opportunity to intervene in this foreclosure action in order to assert a claim of equitable subrogation?

Appellant's Brief at 4.

¶ 6 The issue in this case, and the facts underlying it, are indistinguishable from the recent case of *First Commonwealth Bank v. Heller*, 863 A.2d 1153 (Pa.Super.2004). In that case, Catherine Heller (Heller) obtained several loans, all secured by mortgages on a parcel of real property titled in her name. *Id.* at 1154. In 2001, Heller obtained a loan from First Commonwealth Bank (First Commonwealth) for $119,000. *Id.* At that time, there were two mortgages on Heller's property, from the years of 1990 and 2000, as well as a mortgage for a $15,000 line of credit that was extended to Heller in 1995. *Id.* The proceeds from First Commonwealth's loan were used to pay off the loan secured by the 1990 mortgage and also the line of credit. *Id.* The line of credit remained open, however, and so its mortgage on the property also remained. *Id.* Therefore, after the loan and the line of credit were paid off, the 1995 mortgage remaining on the property from the open line of credit held first lien priority, while the 2000 mortgage occupied the second lien position. *Id.* Due to an error during its title search, First Commonwealth was unaware

of the mortgage that was recorded in 2000. *Id.* When the property was foreclosed upon, First Commonwealth filed a petition to intervene, asserting a right to equitable subrogation, arguing that it was entitled to first lien position. *Id.* The trial court denied First Commonwealth's petition to intervene and this Court affirmed.

¶ 7 The first issue this Court must address, as we did in *Heller,* is the appealability of an order denying intervention, since such an order may or may not have the effect of a final determination. *Id.* at 1155. We stated in *Heller* that:

As a general rule, an appeal will not lie from an order denying intervention, because such an order is not a final determination of the claim made by the would-be intervenor. However, in some cases, the order denying intervention has the practical effect of denying relief to which the intervenor is entitled and which he can obtain in no other way. Such an order will be deemed final, and an appeal therefrom will be allowed. In order to determine the appealability of an order denying intervention, therefore, one must examine the ramifications of the order to determine whether it constitutes a practical denial of relief to which the petitioner for intervention is entitled and which he can obtain in no other way.

*Id.* at 1155.

¶ 8 In *Heller,* we explained that, "The trial court essentially concluded appellant was not a party entitled to relief. If correct, the Order was not final as to appellant and therefore not appealable and we are required to quash the appeal." *Id.* To determine whether First Commonwealth was a party entitled to relief, we went on to examine the merits of First Commonwealth's petition to intervene under the doctrine of equitable subrogation.

¶ 9 Similarly here, the trial court concluded that U.S. Bank was not a party entitled to relief based on equitable subrogation as applied in Pennsylvania. Therefore, to determine if the order denying intervention is appealable, we must examine the merits of U.S. Bank's petition to intervene in order to ascertain whether the trial court was correct in concluding that U.S. bank was not a party entitled to relief.

¶ 10 U.S. Bank claims that it should have been permitted to intervene in the action below in order to assert a claim of equitable subrogation pursuant to Restatement (Third) of Property, Mortgages, § 7.6, which states:

(a) One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.

(b) By way of illustration, subrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation:

(1) in order to protect his or her interest;

(2) under a legal duty to do so;

(3) on account of misrepresentation, mistake, duress, undue influence, deceit, or other similar imposition; or

(4) upon a request from the obligor or the obligor's successor to do so, if the person performing was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice

the holders of intervening interests in the real estate.

¶ 11 While the priority of a lien is generally determined by the date it was recorded, the doctrine of equitable subrogation is an exception to this "first in time" rule. *Heller*, 863 A.2d at 1156. According to the Restatement, equitable subrogation is "an equitable remedy designed to avoid a person's receiving an unearned windfall at the expense of another." RESTATEMENT (THIRD) OF PROPERTY, MORTGAGES, § 7.6 CMT. a (1997). Put more simply, equitable subrogation allows "a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance." *Heller*, 863 A.2d at 1156 (quoting *Houston v. Bank of America Fed. Sav. Bank*, 119 Nev. 485, 78 P.3d 71, 73 (2003)).

¶ 12 While Pennsylvania has not adopted Section § 7.6, we have recognized the doctrine of equitable subrogation. *Id.*, *see Public Service Mutual Ins. Co. v. Kidder–Friedman*, 743 A.2d 485, 488 (Pa.Super.1999). Like many other jurisdictions, we require four criteria to be met for equitable subrogation to apply. *Heller*, 863 A.2d at 1158. These four requirements are:

(1) the claimant paid the creditor to protect his own interests;

(2) the claimant did not act as a volunteer;

(3) the claimant was not primarily liable for the debt; and

(4) allowing subrogation will not cause injustice to the rights of others.

*Id.*

¶ 13 Examining the second requirement that the claimant did not act as a volunteer, in *Home Owners' Loan Corp. v. Crouse*, 151 Pa.Super. 259, 30 A.2d 330 (1943), this Court found that a creditor who had extended a loan, the proceeds of which were applied to previously secured liens, was a volunteer. We concluded that the creditor acted as a volunteer because the creditor was "an entirely voluntary agent with no interest in the property and at liberty to make its own bargain-agree or refuse to make the loan as it saw fit." *Id.* at 332. Accordingly, we concluded that the creditor was not entitled to the relief of equitable subrogation because it had not met the second requirement of the doctrine. In *Home Owners'* we stated:

A mere volunteer or intermeddler who, having no interest to protect, without any legal or moral obligation to pay, and without an agreement for subrogation, or an assignment of the debt, pays the debt of another is not entitled to subrogation, the payment in his case absolutely extinguishing the debt. The payor must have acted on compulsion, and it is only in cases where the person paying the debt of another will be liable in the event of a default or is compelled to pay in order to protect his own interests, or by virtue of legal process, that equity substitutes him in the place of the creditor without any agreement to that effect; in other cases the debt is absolutely extinguished.

*Id.* at 330.

¶ 14 *Home Owners'* reveals one important difference between Pennsylvania's application of equitable subrogation and the application of the doctrine by the Restatement. Under *Home Owners'*, a creditor such as U.S. Bank is considered an "entirely voluntary agent with no interest in the property." *Id.* at 332. However, the Restatement does not adopt the "volunteer" rule but instead only requires that the subrogee paid the creditor to protect some interest. *Heller*, 863 A.2d at 1159 n. 9. Thus, under the Restatement, a mortgagee pays off existing loans in order to protect its own interest in gaining the first

priority lien position, and therefore would be entitled to the remedy of equitable subrogation. *Id.*

¶ 15 Another important difference between Pennsylvania law on equitable subrogation and the Restatement's approach is also illustrated in *Home Owners'.* There, we explained that "the courts of equity will not relieve a party from the consequences of an error due to his own ignorance or carelessness when there were available means which would have enabled him to avoid the mistake if reasonable care had been exercised." *Id.* at 332 (*citing Felin v. Futcher*, 51 Pa.Super. 233, 1912 WL 4727 (Pa.Super.1912)). We went on to conclude that the creditor's mistake "can be attributed only to its own negligence in failing to search or discover what clearly appeared on the public records." *Id.* The Restatement, on the other hand, says that "subrogation can be granted even if the payor had actual knowledge of the intervening interest; the payor's notice, actual or constructive, is not necessarily relevant." RESTATEMENT (THIRD) OF PROPERTY, MORTGAGES, § 7.6 CMT. e (1997). Instead, what is relevant under the Restatement is "whether the payor reasonably expected to get security with a priority equal to the mortgage being paid." *Id.* In .fact, the Restatement declares that a refinancing mortgagee should be presumed to have this expectation, even if they are aware of a remaining lien, unless there is affirmative proof that the mortgagee intended to subordinate its mortgage to the remaining interest. *Id.*

¶ 16 Despite the differences in the Restatement's application of equitable subrogation and in Pennsylvania's application of the doctrine, *Home Owners'* has not been overruled, and as such, it remains binding precedent on this Court. *Heller*, 863 A.2d at 1159–60. Thus, in *Heller*, we concluded that, "While we find the logic of the Restatement to be compelling and very persuasive, we are bound by principles of *stare decisis* and accordingly, must find the trial court properly determined appellant is not entitled to the remedy of equitable subrogation." *Heller*, 863 A.2d at 1157–58. Similarly, we must also follow the precedent set by *Home Owners'* and *Heller.* As we find no facts that distinguish the instant case from *Home Owners'* or *Heller*, we conclude that the denial of U.S. Bank's petition to intervene was proper because U.S. Bank is not a party entitled to relief. *Heller*, 863 A.2d at 1160. Accordingly, this appeal must be quashed.

¶ 17 In conclusion, we note that our decision here is guided not only by the principle of *stare decisis*, but also by the fact that it was U.S. Bank's carelessness that brought about the pecuniary loss it is now facing. However, had U.S. Bank been aware of the mortgage held by Ontario, and Ontario refused to subordinate its mortgage to U.S. Bank's new mortgage, then in all likelihood, U.S. Bank would not have extended a loan to Carr that would have permitted him to refinance his home loan. Moreover, under Pennsylvania's interpretation of the doctrine of equitable subrogation, neither Carr nor U.S. Bank could effect this subordination through a process of equitable subrogation, thereby in all likelihood leaving Carr unable to refinance his existing loan. This scenario may be a frequent dilemma for homeowners amidst the current mortgage crisis, where 1.3 million housing properties were subjected to foreclosure activity in 2007,[1] and estimates predict that capital losses in housing may reach into the trillions of

1. RealtyTrac Inc., *U.S. Foreclosure Activity Increases 75 Percent in 2007* (May 19, 2008)   *available at* realitytrac.com.

dollars in the coming years.[2] In light of the present situation, it is arguable that the issue of Pennsylvania's application of equitable subrogation may be ripe for legislative review.

¶ 18 Appeal quashed.

¶ 19 Judge ORIE MELVIN concurs in the result.

---

**2.** Jia Lynn Yang, *How Bad is the Mortgage Crisis Going to Get?*, Fortune Magazine (2008), *available at* http://money.cnn.com/2008/03/14/news/economy/krugman_ subprime.fortune/index.htm (quoting an interview conducted with Princeton economist Paul Krugman).