Infante v. Bank of America, N.A.

C.P. of Monroe County, No. 2209 CV 2012

*Daniel L. Lyons*, for plantiff.
*Michael P. Coughlin*, for defendant.

ZULICK, *J.*, Sept. 24, 2014—

### FINDINGS OF FACT

1. Matthew Infante (Matthew), a single man, purchased a lot comprised of 1.121 acres at 837 Molasses Valley Road on December 23, 2003 for $35,000.00.

2. Matthew obtained a construction loan in the original principal amount of $157,500.00 from Countrywide Home Loans, Inc. (Countrywide). He gave a mortgage on January 16, 2004 to Countrywide to secure that loan. The mortgage was recorded on January 20, 2004 in the Recorder of Deeds Office (Recorder's Office) In Record Book volume 2179, page 7715.

3. Matthew and Therese Infante (Therese) were married on February 13, 2004.

4. Matthew transferred title to the property to himself and Therese as tenants by the entireties on February 24,

2004. The deed is recorded in Record Book volume 2182, page 7201 in the Recorder's Office.

5. The Infantes constructed two houses on the property and took possession on July 16, 2004.

6. One of the two houses is a colonial-style home and the other is a Cape Cod style home. They are connected by a shared laundry room. The Infantes occupied the colonial-style home, and their daughter's family currently resides in the other.

7. Matthew handled the Infantes' financial affairs.

8. On January 7, 2008, Matthew obtained a loan from Countrywide in the amount of $200,200.00. The loan was secured by a mortgage (the mortgage) that was recorded in the Recorder's Office in Record Book volume 2325 page 4786. The loan proceeds were used in part to satisfy the existing mortgage with Countrywide, which had a balance at that time of $152,503.93. Joint exhibit 7, Settlement Sheet, Line 104. The loan was also used to pay off Michael's credit card debts with Chase ($9,309), WFF National Bank ($2,433), Chase ($8,941), and Sovereign Bank ($16,882). Joint exhibit 7, lines 1302-1305. It also satisfied a loan secured by his Kia Sorrento automobile.

9. Therese had no credit cards in her name in January, 2008.

10. Although Countrywide intended to obtain a first mortgage on the Infante property to secure the new loan, Countrywide only required Matthew to sign the note and mortgage.

11. Service Link, a title agency, handled the title work and conducted the settlement of the loan.

12. Matthew signed a Countrywide loan application in which he acknowledged and agreed that the "loan

requested pursuant to this application...will be secured by a mortgage or deed of trust on the property described in this application."

13. Countrywide issued settlement instructions to Service Link, requiring that "all persons on title" sign the mortgage and that the mortgage constitute a valid, "first position" mortgage against the property. Defendant's exhibit 3.

14. Matthew completed and signed a "Borrower agreement and certification" at Countrywide's behest at the time of closing. That document disclosed to Countrywide the following information:

1. List all property owners who are applicants for this loan:

Matthew V. Infante (handwritten)

2. List all other owners:

Therese A. Infante (handwritten)

3. I/We hold the property as:

Husband and wife (handwritten checkmark)

...Note: If holding title as a married person(s), civil union partner(s) or domestic partner(s) please indicate whether you have divorced, separated or have been widowed since the date you acquired the Property as indicated above. __ Yes _x_ No (No was hand-checked)

Plaintiff's exhibit 5.

15. The mortgage names Matthew V. Infante as "Borrower." Next to his name on the mortgage, "A SINGLE INDIVIDUAL" is crossed out, and "a married man" is handwritten in its place. Joint exhibit 4.

16. The mortgagee of the mortgage loan was Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Countrywide.

17. MERS assigned the Infante Mortgage to Bank of America (BOA) on September 13, 2011. The assignment is recorded in the Recorder's Office at Record Book volume 2391, page 5316. Joint Exhibit 5.

18. Therese began assisting her husband in paying bills in 2009 after he became ill. From that year until May 8, 2011, Therese paid the monthly mortgage payment to Bank of America.

19. Therese was not aware that Matthew had refinanced the mortgage in 2008.

20. Matthew died on May 8, 2011.

21. Therese was made aware of the refinanced mortgage in Matthew's name alone by her attorney after her husband's death.

22. Therese stopped paying the Mortgage after May 9, 2011.

## DISCUSSION

Therese Infante has filed an action for declaratory judgment requesting the court to declare that the mortgage dated January 7, 2008 between Matthew V. Infante and Countrywide Bank, FSB was never a valid lien against property Therese and Matthew owned at 837 Molasses Valley Road, Kunkletown, Pennsylvania. BOA responded to the suit with a counterclaim, seeking reformation of the mortgage; declaratory relief that the Countrywide Mortgage is a valid lien on the Therese Infante property; a finding of equitable subrogation or unjust enrichment; and the imposition of an equitable lien. A non-jury trial was conducted on the parties' claims September 3, 2014 and the parties have filed briefs.

BOA's first argument is that Therese Infante ratified the mortgage when she paid the mortgage payments from 2009 through May 2011. Therese responds that this defense was not raised in the pleadings. Affirmative defenses not raised in new matter in accordance with Pa.R.C.P. 1030 are waived pursuant to Pa.R.C.P. 1032. Rule 1030 lists but does not limit what is includable as new matter. In essence, new matter is anything other than a denial, setoff, or counterclaim. Anderson, Pennsylvania Civil Practice § 1030.4 (1969), *Lorfida v. Mary Robert Realty Co., Inc.*, 539 A.2d 383, 386 (Pa. Super. 1988). Although ratification is not a listed affirmative defense in Pa.R.C.P. 1030, it is not a denial, setoff or counterclaim and it requires proof of facts independent of the plaintiff's claim. It should have been raised in new matter.

The ratification defense is not applicable here in any event. BOA argues that Therese Infante ratified the debt when she made payments on the loan from 2009 through May of 2011 when her husband was ill. BOA cites *Allegheny Gas Co. v. Kemp*, 174 A. 289 (Pa. 1934) in support of its argument. There the Kemps owned a farm as tenants by the entirety. The husband agreed to sell the farm to his nephew in a written agreement of sale. The wife did not sign the agreement but was aware that her husband was selling the farm. The wife later signed a written demand that the buyer pay the balance due on the property or forfeit it. The court found that the Kemps and their buyer had entered into a civil conspiracy to deprive the plaintiff of gas rights to the land. The court also found that the wife had ratified the agreement when she made a demand that the buyer comply with the agreement of sale. When the wife attempted to enforce the agreement, the court found that she consented to be bound by it. "(T)hey can no longer treat it as a nullity, for that would be to maintain a contradiction, or to justify at the same time,

two repugnant claims, both the nullity and the validity of the contract." *Id.* at 293.

*Allegheny Gas Co. v. Kemp* is not analogous to the facts in the present case. Here there was no showing that Therese Infante had anything to do with the negotiations or signing of the mortgage, or that she knew about it. She did not contact BOA about the mortgage and demand compliance, like the party in the above case. In fact, Therese did not contact the bank at all; she only paid her husband's bills while he was ill. There is nothing about Therese's conduct to suggest she ratified the mortgage. Her husband disclosed at the loan closing that he owned the property jointly with his wife. Paying her husband's bills while he was ill did not make them her bills.

BOA also argues that it is entitled to equitable subrogation. BOA contends that should be subrogated to its rights under its 2004 mortgage that it satisfied in the 2008 refinancing transaction. This would give BOA a mortgage lien against the Therese Infante property in the amount it paid to satisfy the first mortgage lien in 2008, $152,503.93. BOA points out that at the time Therese took title, this mortgage was a valid lien on the property, and she took title under and subject to it.

BOA cites two decisions of the Pennsylvania Supreme Court in support of its argument. In *Haverford Loan and Building Assoc. of Phila. v. Dougherty*, 37 A. 179 (Pa. 1897), the borrower, Thomas Dougherty, believed that he held title to a property under his late wife's will. He obtained a mortgage for $2,200.00 from Haverford Loan and Building Association of Philadelphia. The loan was to be secured by a first lien position against the property. At settlement, the loan proceeds were used in part to satisfy the existing first mortgage held by the Fire Association. After closing, Haverford learned that Dougherty was only

a one-fifth tenant in common. The will had devised the property to Dougherty and his four children. Haverford sought equitable subrogation to the first mortgage rights of the Fire Association, whose lien it had satisfied.

The court allowed the subrogation, holding that:

'Where money has been loaned upon a defective mortgage for the purpose of discharging a prior valid incumbrance, {*sic*} and has actually been so applied, the mortgagee may be subrogated to the rights of the prior incumbrancer whom he has thus satisfied, there being no intervening incumbrances.' Sheld. Subr. § 8.

*Haverford Loan & Building Ass'n of Philadelphia v. Dougherty*, 37 A. 179, 181 (Pa. 1897).

A later decision of the Pennsylvania Supreme Court allowed equitable subrogation under similar circumstances. In *Gladowski v. Felczak*, 31 A.2d 718 (Pa. 1943), Polish Falcons, Nest No. 290 of Natrona, an unincorporated, subordinate lodge of the Polish Falcons of America, was the owner of a valuable clubhouse in Natrona that had suffered flood damage. The property was subject to a $3,000.00 mortgage. Nest No. 290 conveyed the property to the American Citizen Club, which then obtained a $6,000.00 mortgage. The proceeds from this mortgage paid off the $3,000 mortgage and were otherwise used to make repairs to the property. After the mortgage funds were disbursed, the deed from the Polish Falcons to the American Citizen Club was declared invalid because the local chapter did not have the necessary approval of the national organization to sell the property.

The new mortgagee did not have a valid first mortgage, because the deed to the American Citizen Club had been declared by a court to be invalid. The mortgagee brought an action seeking to impose its mortgage as an equitable

280

lien. Our Supreme Court allowed the lien, citing the restatement of restitution:

'Where a person lends money to another who contracts to use the money for the discharge of a lien upon property which the other represents as belonging to him and where the money so lent is used for the discharge of such lien, the lender is entitled to have the lien reinstated for his benefit if, unknown to him, the property was not owned by the other.

*Gladowski v. Felczak*, 31 A.2d 718, 720 (Pa. 1943), citing Restatement of the Law of Restitution, § 43(c).

Therese Infante has cited recent decisions of the Pennsylvania Superior Court which deny relief to a mortgagee like BOA which has paid an existing first mortgage but mistakenly did not obtain a first mortgage lien position. These cases consider a creditor who has paid a first mortgage lien in an attempt to obtain its own first mortgage position a "volunteer" and deny relief. The Superior Court discussed the doctrine of equitable subrogation in 1313466 *Ontario, Inc. v. Carr*, 954 A.2d 1, 4-6 (Pa. Super. 2008):

(W)e have recognized the doctrine of equitable subrogation. *Id., see Public Service Mutual Ins. Co. v. Kidder-Friedman*, 743 A.2d 485, 488 (Pa. Super. 1999). Like many other jurisdictions, we require four criteria to be met for equitable subrogation to apply. *Heller*, 863 A.2d at 1158. These four requirements are:

(1) the claimant paid the creditor to protect his own interests;

(2) the claimant did not act as a volunteer;

(3) the claimant was not primarily liable for the debt; and

(4) allowing subrogation will not cause injustice to the rights of others.

*Id.*

Examining the second requirement that the claimant did not act as a volunteer, in *Home Owners' Loan Corp. v. Crouse*, 151 Pa. Super. 259, 30 A.2d 330 (1943), this court found that a creditor who had extended a loan, the proceeds of which were applied to previously secured liens, was a volunteer. We concluded that the creditor acted as a volunteer because the creditor was "an entirely voluntary agent with no interest in the property and at liberty to make its own bargain-agree or refuse to make the loan as it saw fit." *Id.* at 332. Accordingly, we concluded that the creditor was not entitled to the relief of equitable subrogation because it had not met the second requirement of the doctrine...

*Home Owners'* reveals one important difference between Pennsylvania's application of equitable subrogation and the application of the doctrine by the Restatement. Under Home Owners', a creditor such as U.S. Bank is considered an "entirely voluntary agent with no interest in the property." *Id.* at 332. However, the restatement does not adopt the "volunteer" rule but instead only requires that the subrogee paid the creditor to protect some interest. *Heller*, 863 A.2d at 1159 n. 9. Thus, under the restatement, a mortgagee pays off existing loans in order to protect its own interest in gaining the first priority lien position, and therefore would be entitled to the remedy of equitable subrogation. *Id.*

Another important difference between Pennsylvania law on equitable subrogation and the restatement's approach is also illustrated in *Home Owners'*. There,

we explained that "the courts of equity will not relieve a party from the consequences of an error due to his own ignorance or carelessness when there were available means which would have enabled him to avoid the mistake if reasonable care had been exercised." *Id.* at 332 (citing *Felin v. Futcher*, 51 Pa. Super. 233, 1912 WL 4727 (Pa. Super. 1912)). We went on to conclude that the creditor's mistake "can be attributed only to its own negligence in failing to search or discover what clearly appeared on the public records." *Id.* The Restatement, on the other hand, says that "subrogation can be granted even if the payor had actual knowledge of the intervening interest; the payor's notice, actual or constructive, is not necessarily relevant." Restatement (Third) of property, mortgages, § 7.6 cmt. e (1997). Instead, what is relevant under the restatement is "whether the payor reasonably expected to get security with a priority equal to the mortgage being paid." *Id.* In fact, the Restatement declares that a refinancing mortgagee should be presumed to have this expectation, even if they are aware of a remaining lien, unless there is affirmative proof that the mortgagee intended to subordinate its mortgage to the remaining interest. *Id.*

Despite the differences in the restatement's application of equitable subrogation and in Pennsylvania's application of the doctrine, *Home Owners'* has not been overruled, and as such, it remains binding precedent on this court. *Heller*, 863 A.2d at 1159-60. Thus, in *Heller*, we concluded that, "While we find the logic of the restatement to be compelling and very persuasive, we are bound by principles of stare decisis and accordingly, must find the trial court properly determined appellant is not entitled to the remedy of equitable subrogation." *Heller*, 863 A.2d at 1157-58. Similarly, we must also follow the precedent set by *Home Owners'* and *Heller*.

As we find no facts that distinguish the instant case from *Home Owners'* or *Heller*, we conclude that the denial of U.S. Bank's petition to intervene was proper because U.S. Bank is not a party entitled to relief. *Heller*, 863 A.2d at 1160. Accordingly, this appeal must be quashed.[1]

*Id.*

The *Ontario* decision expressed the superior court's reluctance to find that a mortgagee in a refinancing is acting as a volunteer in satisfying existing first mortgages. Obviously, the court agreed with the restatement position that a mortgagee must satisfy existing mortgages in order to perfect its own first lien position. First lien position is the cornerstone upon which residential mortgage lending is based. The superior court felt that it was bound by the precedent established in *Home Owners'* and therefore had to deny equitable subrogation.

BOA argues that seventy years of Superior Court precedent has ignored the law as applied by the Pennsylvania Supreme Court in the *Haverford* and

---

1. The Superior Court concluded by saying that:

In conclusion, we note that our decision here is guided not only by the principle of stare decisis, but also by the fact that it was U.S. Bank's carelessness that brought about the pecuniary loss it is now facing. However, had U.S. Bank been aware of the mortgage held by Ontario, and Ontario refused to subordinate its mortgage to U.S. Bank's new mortgage, then in all likelihood, U.S. Bank would not have extended a loan to Carr that would have permitted him to refinance his home loan. Moreover, under Pennsylvania's interpretation of the doctrine of equitable subrogation, neither Carr nor U.S. Bank could effect this subordination through a process of equitable subrogation, thereby in all likelihood leaving Carr unable to refinance his existing loan. This scenario may be a frequent dilemma for homeowners amidst the current mortgage crisis, where 1.3 million housing properties were subjected to foreclosure activity in 2007, and estimates predict that capital losses in housing may reach into the trillions of dollars in the coming years. In Sight of the present situation, it is arguable that the issue of Pennsylvania's application of equitable subrogation may be ripe for legislative review.

*1313466 Ontario, Inc. v. Carr*, 954 A.2d 1, 4-6 (Pa. Super. 2008).

*Gladowski* cases. The supreme court stated in *Haverford*:

> In the present case the appellant was not a volunteer, but paid the first mortgage on the express direction of the debtor, and with the intention of both parties that the appellant should be secured by the land. 'A person who has lent money to a debtor for the purpose of discharging a debt may be subrogated by the debtor to the creditor's rights; and if the party who has agreed to advance the money for the purpose employs it himself in paying the debt and discharging the incumbrance on land given for its security, he is not to be regarded as a volunteer. He is not, after such an agreement with the debtor, a stranger in relation to the debt, but may, in equity, be entitled to the benefit of the security which he has satisfied with the expectation of receiving a new mortgager or lien upon the land for the money paid.' Dix. Subr. 165. "When the holder of a junior mortgage discharges the lien of a senior incumbrance upon the property, he thereby becomes entitled to all the benefits of the security represented by the lien so discharged.' Beach, Mod. Eq. Jur. § 804. 'When on the foreclosure of a second mortgage it appears that the loan by the second mortgagee was made on an agreement with the mortgagor that it should be applied to extinguish the first mortgage, and that part of the loan was actually so applied, the second mortgagee is entitled to a decree subrogating him to the rights of the first mortgagee on payment of the balance due on the mortgage.' *Id.* § 806. 'Where money has been loaned upon a defective mortgage for the purpose of discharging a prior valid incumbrance, and has actually been so applied, the mortgagee may be subrogated to the rights of the prior incumbrancer whom he has thus satisfied, there being no intervening incumbrances.' Sheld Subr. § 8. *Haverford Loan & Building Ass'n of Philadelphia v. Dougherty*, 37 A.179, 181 (Pa. 1897).

Almost fifty years later, in the *Gladowski* case the Supreme Court again allowed equitable subrogation where a mortgage was obtained on a defective title. Here the court cited the Restatement of Restitution in support of its ruling:

> And in § 162 it is stated: 'Where property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lienholder.' That the law in most jurisdictions is in accord with these statements is shown by the long list of authorities in support of them cited in *Ingram v. Jones*, 10 Cir., 47 F.2d 135, 140. That they have been accepted and followed by the appellate courts of our own State is established by cases in which they have been applied: *Haverford Loan & Building Association v. Fire Association of Philadelphia*, 180 Pa. 522, 37 A. 179, 57 Am. St. Rep. 657; *Smith v. Smith, Jr.*, 101 Pa. Super. 545; *see also General Casmir Pulaski Building & Loan Association v. Provident Trust Co.*, 338 Pa. 198, 12 A.2d 336. *Gladowski v. Felczak*, 31 A.2d 718, 720 (Pa. 1943).

It should also be noted that the rights of a third party lien creditor were directly involved in the decision in *Home Owners' Loan Corporation v. Crouse, et. al.*, 30 A.2d 330 (Pa. Super. 1943), which the *Ontario* court followed. There, Crouse was a judgment creditor behind the liens paid by Home Owners' Loan Corporation. When Home Owners' Loan Corporation paid off the senior liens, Crouse became a first lien holder. The Superior Court felt it was wrong after a significant passage of time, to deny Crouse his lien priority.

Here, there are no intervening creditors. Admittedly, Countrywide and its title company were negligent, perhaps grossly so. Countrywide requested a first mortgage position from Matthew, and required all owners to be on the mortgage in its loan instructions. Yet Matthew disclosed on his paperwork that Therese was a co-owner. The mortgage was hand corrected to state that he was a married man. Under these circumstances, BOA is not entitled to mortgage reformation. *See Regions Mortgage, Inc. v. Muthler*, 889 A.2d 39 (Pa. 2005). However, equitable subrogation to the 2004 mortgage Countrywide satisfied is not reformation. The Supreme Court decisions, *Haverford* and *Gladowski*, do not address whether the negligence of the creditor precludes subrogation.

There is no evidence here that Countrywide acted in bad faith. It loaned Matthew the money in 2008 and satisfied a mortgage that encumbered Therese's title. No Intervening Creditors' rights are involved, as in *Ontario*. Under the *Haverford* and *Gladowski* decisions, Countrywide did not act as a volunteer, as the mortgage was satisfied as a result of Matthew's refinancing. Finally, Therese would be unjustly enriched if equitable subrogation were not allowed. After due consideration, I find that based upon the *Haverford* and the *Gladowski* rulings, BOA is entitled to equitable subrogation to its earlier mortgage, which it satisfied in 2008.[2]

## DECISION

And now, this 24th day of September, 2014, following a non-jury trial in this case and upon consideration of the parties' briefs, it is ordered that:

---

2. Therese Infante points out that my decision in *America's Wholesale Lender v. Ryan, et al.*, 10647 Civil 2011 supports denial of BOA's claims. That decision was based upon America's Wholesale Lender's request to reform the mortgage to include wife's interest, and was therefore controlled by the *Regions Mortgage* decision.

1. Plaintiff Therese A. Infante's request for declaratory judgment is granted in part and denied in part. Her request for a determination that the 2008 Countrywide mortgage may not be reformed to include her as mortgagor is granted. However, Bank of America, N.A. shall be equitably subrogated to the extent of its payment to satisfy the 2004 Countrywide mortgage, as set forth in the next paragraph.

2. Defendant Bank of America N.A.'s request for equitable subrogation to the 2004 Countrywide mortgage is granted, and an equitable lien is impressed, as of January 20, 2004 upon the property of Therese Infante in Eldred Township, Monroe County, Pennsylvania as is more particularly described in the deed from Michael V. Infante to Michael V. Infante and Therese Infante, his wife, recorded in the Office for the Recording of Deeds in and for Monroe County Pennsylvania in record Book volume 2182, page 7201 in favor of defendant Bank of America, N.A., in the amount of $152,503.93 together with interest on that sum from June 1, 2011.

3. In all other respects, the counterclaim of Bank of America is denied.