J-A24038-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THERESE A. INFANTE, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| BANK OF AMERICA, N.A. SUCCESSOR | : | |
| BY MERGER TO BAC HOME LOANS | : | |
| SERVICING, LP FKA COUNTRYWIDE | : | |
| HOME LOANS SERVICING, LP, | : | |
| | : | |
| Appellee | : | No. 154 EDA 2015 |

Appeal from the Judgment Entered February 5, 2015,
in the Court of Common Pleas of Monroe County,
Civil Division at No(s): No. 2209 CV 2012

BEFORE:  PANELLA, WECHT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED OCTOBER 30, 2015**

In this action for declaratory judgment, Therese A. Infante (Therese)

appeals from the judgment entered on February 5, 2015, which, *inter alia*,

granted equitable relief to Appellee, Bank of America, N.A (BOA).  After

review, we affirm.

The trial court made the following findings of fact.

1. Matthew Infante (Matthew), a single man, purchased a lot
   comprised of 1.121 acres at 837 Molasses Valley Road on
   December 23, 2003 for $35,000.00.

2. Matthew obtained a construction loan in the original principal
   amount of $157,500.00 from Countrywide Home Loans, Inc.
   (Countrywide). He gave a mortgage on January 16, 2004 to
   Countrywide to secure that loan. The mortgage was recorded on
   January 20, 2004 in the Recorder of Deeds Office (Recorder's
   Office) in Record Book volume 2179, page 7715.

* Retired Senior Judge assigned to the Superior Court.

3. Matthew and Therese Infante (Therese) were married on February 13, 2004.

4. Matthew transferred title to the property to himself and Therese as tenants by the entireties on February 24, 2004. The deed is recorded in Record Book volume 2182, page 7201 in the Recorder's Office.

5. The Infantes constructed two houses on the property and took possession on July 16, 2004.

6. One of the two houses is a colonial-style home and the other is a Cape Cod style home. They are connected by a shared laundry room. The Infantes occupied the colonial-style home, and their daughter's family currently resides in the other.

7. Matthew handled the Infantes' financial affairs.

8. On January 7, 2008, Matthew obtained a loan from Countrywide in the amount of $200,200.00. The loan was secured by a mortgage (the [2008] Mortgage) that was recorded in the Recorder's Office in Record Book volume 2325 page 4786. The loan proceeds were used in part to satisfy the existing mortgage with Countrywide, which had a balance at that time of $152,503.93. The loan was also used to pay off [Matthew's] credit card debts with Chase ($9,309), WFF National Bank ($2,433), Chase ($8,941), and Sovereign Bank ($16,882). It also satisfied a loan secured by his Kia Sorrento automobile.

9. Therese had no credit cards in her name in January, 2008.

10. Although Countrywide intended to obtain a first mortgage on the Infante property to secure the new loan, Countrywide only required Matthew to sign the note and the [2008 M]ortgage.

11. Service Link, a title agency, handled the title work and conducted the settlement of the loan.

12. Matthew signed a Countrywide loan application in which he acknowledged and agreed that the "loan requested pursuant to this application … will be secured by a mortgage or deed of trust on the property described in this application."

13. Countrywide issued settlement instructions to Service Link, requiring that "all persons on title" sign the mortgage and that the [2008 M]ortgage constitute a valid, "first position" mortgage against the property.

14. Matthew completed and signed a "Borrower Agreement and Certification" at Countrywide's behest at the time of closing. That document disclosed to Countrywide the following information:

> 1. List all Property Owners who are applicants for this loan: *Matthew V. Infante* (handwritten)
>
> 2. List all other owners: *Therese A. Infante* (handwritten)
>
> 3. I/We hold the property as: Husband and [W]ife (handwritten checkmark)
>     ... Note: If holding title as a married person(s), civil union partner(s) or domestic partner(s) please indicate whether you have divorced, separated or have been widowed since the date you acquired the Property as indicated above. ___ Yes _x_ No (No was handchecked)

15. The [2008 M]ortgage names Matthew V. Infante as "Borrower." Next to his name on the Mortgage, "A SINGLE INDIVIDUAL" is crossed out, and "a married man" is handwritten in its place.

16. The mortgagee of the [2008] Mortgage loan was Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Countrywide.

17. MERS assigned the [2008 M]ortgage to … (BOA) on September 13, 2011. The assignment is recorded in the Recorder's Office at Record Book volume 2391, page 5316.

18. Therese began assisting her husband in paying bills in 2009 after he became ill. From that year until May 8, 2011, Therese paid the monthly mortgage payment to [(BOA)].

19. Therese was not aware that Matthew had refinanced the Mortgage in 2008.

20. Matthew died on May 8, 2011.

21. Therese was made aware of the [2008 Mortgage] in [Matthew's] name alone by her attorney after her husband's death.

22. Therese stopped paying the [2008] Mortgage after May 9, 2011.

Trial Court Opinion, 9/24/2014, at 1-4 (citations omitted).

On March 15, 2012, Therese filed a complaint for declaratory judgment asserting that the 2008 Mortgage was not a valid lien against the property. BOA filed an answer with new matter and counterclaims. In its counterclaims, BOA sought relief based on reformation of mortgage, declaratory relief, equitable subrogation, unjust enrichment, and equitable lien. Therese filed a responsive pleading.

The case proceeded to a non-jury trial on September 3, 2014. On September 24, 2014, the trial court issued its verdict, which found in favor of Therese as to the reformation of mortgage, and in favor of BOA's request as to the issue of equitable subrogation, and placed an equitable lien against the property in the amount of the 2004 Mortgage, $152,503.93, plus interest from June 1, 2011.

Following oral argument, Therese's timely-filed post-trial motions were denied on December 9, 2014. Judgment was entered on February 5, 2015. This timely appeal followed. Both Therese and the trial court complied with Pa.R.A.P. 1925.

On appeal, Therese argues that the trial court erred in granting BOA's request for equitable subrogation. Specifically, she contends that, in

reaching its result, the trial court (1) ignored more recent precedential cases issued by this Court and (2) improperly distinguished prior Supreme Court holdings. Therese's Brief at 6.

Our standard and scope of review for these questions are well-established.

> Our review in a non-jury case such as this is limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.
>
> The [trial] court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence. Conclusions of law, however, are not binding on an appellate court, whose duty it is to determine whether there was a proper application of law to fact by the lower court. With regard to such matters, our scope of review is plenary as it is with any review of questions of law.

***Shaffer v. O'Toole***, 964 A.2d 420, 422-23 (Pa. Super. 2009) (internal quotation marks and citations omitted).

In both of her issues, Therese contends that the trial court erred in finding that BOA was entitled to equitable subrogation. Therese's Brief at 9-18. This Court has explained as follows.

> While the priority of a lien is generally determined by the date it was recorded, the doctrine of equitable subrogation is an

- 5 -

exception to this "first in time" rule. …[E]quitable subrogation is an equitable remedy designed to avoid a person's receiving an unearned windfall at the expense of another. Put more simply, equitable subrogation allows a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance.

[Pennsylvania has] recognized the doctrine of equitable subrogation. Like many other jurisdictions, we require four criteria to be met for equitable subrogation to apply. These four requirements are:

(1) the claimant paid the creditor to protect his own interests;

(2) the claimant did not act as a volunteer;

(3) the claimant was not primarily liable for the debt; and

(4) allowing subrogation will not cause injustice to the rights of others.

*1313466 Ontario, Inc. v. Carr*, 954 A.2d 1, 4 (Pa. Super. 2008) (citations and quotations omitted).

With respect to the second prong of the test, this Court has noted that "[o]ne who is under no legal obligation or liability to pay a debt and who has no interest in, or relation to, the property is a stranger or volunteer with reference to the subject of subrogation." *First Commonwealth Bank v. Heller*, 863 A.2d 1153, 1159 (Pa. Super. 2004) (citation omitted).

Citing this Court's decisions in *Carr*, *Heller*, and *Home Owners' Loan Corp. v. Crouse*, 30 A.2d 330, 332 (Pa. Super. 1943), Therese contends that BOA failed to satisfy the aforementioned requirements and, as such, the trial court erred in granting equitable subrogation.

- 6 -

In **Crouse**,

> this Court reviewed the claim of a creditor to whom the homeowners had applied for a loan to pay various earlier liens on the property. The creditor extended the loan, the proceeds of which were duly applied to those liens. The creditor was unaware, however, of an intervening judgment which had been entered against the homeowners, even though the judgment appeared in public records. The creditor requested that the intervening lien holder subordinate its lien to that of the creditor. The intervening lien holder refused. The creditor filed a complaint alleging the intervening lien holder was unjustly enriched at its own expense and requested that the creditor be subrogated to the priorities of those lien holders whose liens the creditor had paid.

**Heller**, 863 A.2d at 1158-1159.

This Court denied a claim for equitable subrogation on the basis that "Home Owners' Loan Corporation was a stranger to the homeowner and that it was under no legal obligation or compulsion to pay the homeowner's debts. The corporation was an entirely voluntary agent with no interest in the property and at liberty to make its own bargain-agree [*sic*] or refuse to make its loan as it saw fit." **Crouse**, 30 A.2d at 332. Moreover, the Court determined that Home Owners' negligence prevented it from discovering the intervening judgment. **Id.**

In **Heller**, there existed three mortgage liens against the property at the time First Commonwealth Bank extended a mortgage loan to Heller, and at the time of closing. First Commonwealth Bank paid off the first two liens, but, because its title company failed to discover the third mortgage held by Central bank, it did not pay off the third. The trial court denied First

Commonwealth Bank's request for equitable relief on the basis that the Bank "had not demonstrated the existence of the prerequisites necessary for invoking the remedy of equitable subrogation." *Heller*, 863 A.2d at 1155-56. On appeal, this Court recognized *Crouse* as binding precedent and affirmed the trial court's determination that First Commonwealth's "'problem' … was the result of its own negligence in failing to discover [Central] Bank's mortgage, to which [First Commonwealth's] mortgage could only be secondary." *Id.* at 1155.

Most recently, in *Carr*, we held that U.S. Bank was not entitled to equitable subrogation. In that case, as in *Crouse* and *Heller*, the title search had failed to reveal another mortgage lien on the property. Applying *Crouse*, we held that U.S. Bank's negligence in failing to discover the mortgage held by 1313466 Ontario, Inc. barred relief.

Therese argues that *Crouse*, *Heller*, and *Carr* require this Court to grant her relief. In contrast, BOA argues that two Supreme Court cases, *Haverford Loan & Bldg. Ass'n of Philadelphia v. Dougherty*, 37 A. 179 (Pa. 1897) and *Gladowski v. Fefczak*, 31 A.2d 718 (Pa. 1943), control. The trial court summarized those holdings as follows.

> In *Haverford,* the borrower, Thomas Dougherty, believed that he held title to a property under his late wife's will. He obtained a mortgage for $2,200.00 from Haverford []. The loan was to be secured by a first lien position against the property. At settlement, the loan proceeds were used in part to satisfy the existing first mortgage held by the Fire Association. After closing, Haverford learned that Dougherty was only a one-fifth tenant in common. The will had devised the property to Dougherty and his

four children. Haverford sought equitable subrogation to the first mortgage rights of the Fire Association, whose lien it had satisfied. The [C]ourt allowed the subrogation, holding that:

> Where money has been loaned upon a defective mortgage for the purpose of discharging a prior valid incumbrance, {*sic*} and has actually been so applied, the mortgagee may be subrogated to the rights of the prior incumbrancer whom he has thus satisfied, there being no intervening incumbrances. Sheld. Subr. § 8.

[**Haverford**, 37 A. at 181].

A later decision of the Pennsylvania Supreme Court allowed equitable subrogation under similar circumstances. In **Gladowski**, Polish Falcons, Nest No. 290 of Natrona, an unincorporated, subordinate lodge of the Polish Falcons of America, was the owner of a valuable clubhouse in Natrona that had suffered flood damage. The property was subject to a $3,000.00 mortgage. Nest No. 290 conveyed the property to the American Citizen Club, which then obtained a $6,000.00 mortgage. The proceeds from this mortgage paid off the $3,000 mortgage and were otherwise used to make repairs to the property. After the mortgage funds were disbursed, the deed from the Polish Falcons to the American Citizen Club was declared invalid because the local chapter did not have the necessary approval of the national organization to sell the property.

The new mortgagee did not have a valid first mortgage, because the deed to the American Citizen Club had been declared by a court to be invalid. The mortgagee brought an action seeking to impose its mortgage as an equitable lien. Our supreme court allowed the lien, citing the Restatement of Restitution:

> Where a person lends money to another who contracts to use the money for the discharge of a lien upon property which the other represents as belonging to him and where the money so lent is used for the discharge of such lien, the lender is entitled to have the lien reinstated for his benefit if,

unknown to him, the property was not owned by the other.

[**Gladowski**, 31 A.2d at 720] *citing* Restatement of the Law of Restitution, § 43(c).

* * *

[In finding that Haverford was entitled to equitable subrogation, t]he [Supreme Court] stated []:

In the present case the appellant was not a volunteer, but paid the first mortgage on the express direction of the debtor, and with the intention of both parties that the appellant should be secured by the land. A person who has lent money to a debtor for the purpose of discharging a debt may be subrogated by the debtor to the creditor's rights; and if the party who has agreed to advance the money for the purpose employs it himself in paying the debt and discharging the incumbrance on land given for its security, he is not to be regarded as a volunteer. He is not, after such an agreement with the debtor, a stranger in relation to the debt, but may, in equity, be entitled to the benefit of the security which he has satisfied with the expectation of receiving a new mortgage or lien upon the land for the money paid. When the holder of a junior mortgage discharges the lien of a senior incumbrance upon the property, he thereby becomes entitled to all the benefits of the security represented by the lien so discharged. When on the foreclosure of a second mortgage it appears that the loan by the second mortgagee was made on an agreement with the mortgagor that it should be applied to extinguish the first mortgage, and that part of the loan was actually so applied, the second mortgagee is entitled to a decree subrogating him to the rights of the first mortgagee on payment of the balance due on the mortgage. Where money has been loaned upon a defective mortgage for the purpose of discharging a prior valid incumbrance, and has actually been so applied, the mortgagee may be subrogated to the

rights of the prior incumbrancer whom he has thus satisfied, there being no intervening incumbrances.

[**Haverford**, 37 A. at 181 (citations omitted)].

Almost-fifty years later, in the **Gladowski** case the Supreme Court again allowed equitable subrogation where a mortgage was obtained on a defective title. Here the court cited the Restatement of Restitution in support of its ruling:

And in § 162 it is stated: 'Where property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lienholder.' That the law in most jurisdictions is in accord with these statements is shown by the long list of authorities in support of them cited in **Ingram v. Jones**, 10 Cir., 47 F.2d 135, 140. That they have been accepted and followed by the appellate courts of our own State is established by cases in which they have been applied: [**Haverford**, **supra.**]; **Smith v. Smith, Jr.**, 101 Pa. Super. 545 [(1930)]; **see also General Casmir Pulaski Building & Loan Association v. Provident Trust Co.**, [12 A.2d 336 (Pa. 1940)].

[**Gladowski**, 31 A.2d at 720].

Trial Court Opinion, 9/24/2014, at 6-8, 10-11 (footnote omitted).

We agree with the trial court and BOA that the instant case is in line with the factual scenarios addressed by our Supreme Court in **Haverford** and **Gladowski**, and that the three Superior Court cases relied upon by Therese are readily distinguishable. As the trial court points out, this Court's decisions in **Crouse**, **Heller**, and **Carr** deny relief to mortgagees that pay off an existing mortgage, but mistakenly did not obtain a first lien position due

to the presence of an undiscovered intervening creditor. Such is not the case herein. Rather, BOA is seeking reimbursement for the amount of the 2004 mortgage its successor paid off in 2008, and to which Therese was subject at the time she took title in 2004. We agree with the trial court that, under **Haverford** and **Gladowski**, BOA has a valid claim for equitable subrogation because Countrywide did not act as a "volunteer," and because Therese would be unjustly enriched if she were permitted to retain the property without bearing responsibility for the amount of the 2004 mortgage. Moreover, based on the above, we hold that BOA is entitled to an equitable lien against the property. *See General Casmir Pulaski Bldg. & Loan Ass'n v. Provident Trust Co. of Philadelphia*, 12 A.2d 336, 338 (Pa. 1940) ("Under the law of unjust enrichment, the [purchaser] should be required to reimburse [the lender] for the money lent to buy the property as far as equitably proper to do so.")

Judgment affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2015

.